## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID JOHANSEN, an individual; JOHN LYON, an individual, professionally known as SOUTHSIDE JOHNNY; PAUL COLLINS, an individual, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SONY MUSIC ENTERTAINMENT INC., a Delaware corporation, and DOES 1 through 10, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) **COPYRIGHT INFRINGEMENT; AND** <br><br> (2) **DECLARATORY RELIEF** <br><br><br> **DEMAND FOR TRIAL BY JURY** |

Plaintiffs DAVID JOHANSEN, an individual ("Johansen"), JOHN LYON, an individual, professionally known as SOUTHSIDE JOHNNY ("Lyon"), and PAUL COLLINS, an individual ("Collins") (collectively, "Plaintiffs") on behalf of themselves and all other similarly situated authors of sound recordings ("sound recordings") who have served Notices of Termination pursuant to §302 of the Copyright Act of 1976 upon Defendant SONY MUSIC ENTERTAINMENT INC. ("Sony" or "Defendant") and DOES 1-10 (collectively "Defendants"), allege as follows.

### NATURE OF THE ACTION

1. Since the first Copyright Act was enacted in 1790, that Act, and the several successive copyright statutes, have always had a feature which allows a second chance for authors (or their heirs) to reclaim copyrights from unwise grants made by authors early on in their careers, close to the creation of the works. While the particular features of those laws, and the length of the terms and statutory scheme of the terminations involved, have changed and evolved, the strong "second chance" concept has remained. In fact, the very first act, the Copyright

Act of 1790, borrowed that concept from the English Statute of Anne, enacted in 1709, the first copyright law. The theme continued in the Copyright Acts of 1831, 1870, and 1909.

2.      Likewise, §203 of the Copyright Act of 1976 modified the Act of 1909 substantially, but continued the policy with full force. According to the Congressional Record, the purpose of the statute was to protect authors and their heirs from "the unequal bargaining position of authors" in dealing with unpublished works, because of "the impossibility of [an author] determining [his or her] work's prior value until it has been exploited." H.R.Rep. No. 94-1476, at 124 (1976). Section 203 provides that authors (a term that includes both songwriters and recording artists) may terminate grants of copyright ownership thirty-five (35) years after the initial grant, generally computed from the date of the publication of those works subject to the grant.

3.      But while the Copyright Act confers upon authors the valuable "second chance" that they so often need, the authors of sound recordings, in particular, who have attempted to avail themselves of this important protection have encountered not only resistance from many record labels, they have been subjected to the stubborn and unfounded disregard of their rights under the law and, in many instances, willful copyright infringement.

4.      Johansen, Lyon, and Collins, and hundreds of other recording artists, have served Notices of Termination upon Sony pursuant to the provisions set forth in 17 U.S.C. §203, but Sony has routinely and systematically refused to honor them. These refusals are made, in every instance, on similar legal grounds, the first and foremost of which is Sony's position that the sound recordings created by recording artists under contract with Sony (or its affiliated or predecessor companies) are "works made for hire," and, therefore, not part of the subject matter of §203. Sony claims that the recordings are works made for hire because of contractual language that is found in every Sony recording agreement. As a result

2

of Sony's policy, Sony has refused to allow any recording artist to take over control of the sound recordings or enter into an agreement with a different label for the exploitation of recordings, after the effective date of termination. In many instances, Sony has continued to exploit the recordings after the effective date, thereby engaging in willful copyright infringement of the United States copyright in those recordings. As a result of Sony's actions, Sony has effectively stymied any chance that the class plaintiffs have of entering into a new agreement with a third party, or even exploiting the recordings themselves, as is their right. As a result, these actions by Sony have effectively destroyed the very salability of the post-termination rights in the recordings that the Copyright Act expressly guarantees.

5.     On account of Sony's repeated, methodical, and willful copyright infringement, actual and statutory damages are the remedy. For those recordings for which the associated Notice of Termination has not reached its effective date of termination, the proper remedy is declaratory relief. With regard to both copyright infringement and all recordings for which a Notice of Termination has been sent to Sony, injunctive relief, addressing and preventing Sony's lawless behavior, is warranted. Therefore, Plaintiffs bring this class action for copyright infringement, declaratory relief, and injunctive relief, on behalf of themselves and all similarly situated recording artists who have sent Notices of Termination to Sony with an effective date of termination on or after January 1, 2013, as more precisely described in ¶16, below.

## THE PARTIES

6.     Plaintiff DAVID JOHANSEN ("Johansen") is a resident of Staten Island, New York. Johansen is an American singer, songwriter and actor, who began his career in the early 1970s as a member of the seminal proto-punk musical group, the New York Dolls. In 1976, he began a solo career and released several successful albums. In the late 1980s, he adopted the pseudonym Buster Poindexter, and has also been involved in many subsequent musical groups and projects.

3

7.     Plaintiff JOHN LYON, professionally known as SOUTHSIDE JOHNNY ("Lyon") is a resident of Ocean Grove, New Jersey. Lyon is an American singer-songwriter who first achieved prominence in the mid-1970s as the second prominent performer emerging from the "Jersey Shore" music scene, following Bruce Springsteen. Best known by his stage name, he fronts his band Southside Johnny and the Asbury Jukes, and has long been considered the Grandfather of "the New Jersey sound." Lyon signed to Epic Records, a division Sony's predecessor, CBS Records, Inc., in or about 1976.

8.     Plaintiff PAUL COLLINS ("Collins") is a resident of New York, New York. Collins is a musician and songwriter, and is best known for his musical group Paul Collins' Beat. Collins entered into a recording agreement in 1979 with CBS Records, Inc., a predecessor to Sony.

9.     Defendant SONY MUSIC ENTERTAINMENT INC. ("Sony") is a Delaware corporation with its principal place of business in New York, New York. Sony is a record label, as well as a global music conglomerate, and released music under the Columbia, RCA, Epic, and Arista imprints, among many others.

10.     The true names and capacities (whether individual, corporate, associate or otherwise) of the defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when such have been ascertained.  Upon information and belief, each of the Doe defendants herein is responsible in some manner for the occurrences herein alleged, and Plaintiffs' and class members' injuries as herein alleged were proximately caused by such defendants' acts or omissions.

11.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this Complaint, Sony and each of the Doe defendants were the agent of each other and, in doing the things alleged in this Complaint, were acting within the course and scope of such agency.

154498.00601/116936619v.1

## JURISDICTION AND VENUE

12.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq.*, and also seeks declaratory relief with regard to several legal issues that arise from the language and interpretation of the Copyright Act.

13.     This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1338(a).

14.     This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§2201 and 2202.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) and 1400(a) because Sony is subject to personal jurisdiction in this District and because a substantial part of the events or omissions by Sony giving rise to the claims occurred in this District.

## CLASS ALLEGATIONS

16.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. Proc. 23 on behalf of themselves and on behalf of a class of similarly situated recording artists, defined as:

> All recording artists (and statutory heirs and personal representatives of those recording artists, if applicable) who have served Notices of Termination on Sony pursuant to §203 of the Copyright Act (or who may serve such Notice in the pendency of this action), with an effective date of termination of January 1, 2013 or later, and who have not entered into a further agreement with Sony (pursuant to §203(b)(4)) wherein Sony has been granted further rights therein.

154498.00601/116936619v.1

17.    This action has been brought and may be properly maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are readily and easily ascertainable and identifiable.

18.    The members of the class are so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that there are hundreds of members in the class who can be readily located, identified from various records and databases (including those maintained by Sony and the United States Copyright Office), and notified of this action.

19.    Plaintiffs' claims for copyright infringement and declaratory relief are typical of the claims of the members of the class, and Plaintiffs' interests are consistent with and not antagonistic to those of the other members of the class they seek to represent. Plaintiffs and all members of the class have sustained damages and face irreparable harm arising out of Defendants' continued infringement and disregard of the Notices of Termination as alleged herein and, thus, are entitled to recover actual damages and/or statutory damages and obtain injunctive relief to prevent further wrongful conduct by Defendants. In other instances, class members have had the salability of their sound recordings damaged and/or destroyed by Sony's behavior, and seek declaratory relief for the legal issues discussed below.

20.    Plaintiffs have no interests that are adverse to, or which conflict with, the interests of the absent members of the class and they are able to fairly and adequately represent and protect the interests of such a class. Plaintiffs believe strongly in the protection of the rights of recording artists and are committed to protecting such rights. Plaintiffs have raised a viable claim for copyright infringement of the type reasonably expected to be raised by members of the class, and will diligently and vigorously pursue that claim.  If necessary, Plaintiffs may seek leave of the Court to amend this Complaint to include additional class representatives to represent the class or additional claims as may be appropriate.

Plaintiffs are represented by experienced, qualified, and competent counsel who are committed to prosecuting this action.

21.     Questions of fact and law (to the extent that any may exist) are common to all members of the class and would plainly predominate over any questions affecting only individual members of the class under Fed. R. Civ. Proc. 23(b)(3). These common legal and factual questions, to the extent that any may exist, do not vary from class member to class member, and can be determined without reference to the individual circumstances of any class member, including (without limitation) the following:

(A)     Whether sound recordings can ever be considered "works made for hire," as that term is defined in the Copyright Act, if the definition set forth in §101 of the Copyright Act does not include sound recordings as being one of the types of works that can be a work made for hire;

(B)     Whether the release of sound recordings that were created by a particular recording artist in "album" form, as is typical in the music industry, constitutes a "contribution of a collective work," as that term is used in §101 of the Copyright Act, thereby transforming the sound recordings into "works made for hire";

(C)     Whether a foreign choice of law provision in a recording agreement has any affect upon the application of United States copyright law (and §203 specifically) to the United States copyright in a sound recording;

(D)     Whether Sony's position regarding "work made for hire" clauses violates §203(a)(5) of the Copyright Act;

(E)     Whether Plaintiff class members have fully complied with §203 and its attendant regulations promulgated by the Copyright Office by including, on Notices of Termination, the album title and corresponding copyright registration number, thereby giving Sony full notice of all of the

7

sound recordings that are subject to the termination; and

(F)   The basis and method for determining and computing damages, including statutory damages.

22.   Class certification is appropriate pursuant to Fed. R. Civ. Proc. 23(b)(2) because Sony has acted and/or refused to act on grounds that are generally applicable to the Class, which makes declaratory and injunctive relief with respect to Plaintiff and the Class, as a whole, appropriate.

23.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all class members is impracticable. The claims of the individual members of the class may range from smaller sums to larger sums. Thus, for those class members with smaller claims, the expense and burden of individual litigation may not justify pursuing the claims individually. And even if every member of the class could afford to pursue individual litigation, the court system could not be so encumbered. It would be unduly burdensome to those courts in which individual litigation of numerous cases would otherwise proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and court system, and protects the rights of each member of the class. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement – Against All Defendants)

24.   Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 23 above, as though fully set forth herein.

25.    Pursuant to §203 of the Copyright Act, recording artists have the right to serve a Notice of Termination to terminate the grant of rights made to a record label, generally thirty-five (35) years after the publication of those recordings. The Notice is served upon the current grantee, and, with regard to Johansen, Lyon, Collins, and the members of the class, that current grantee is Sony.

The Johansen Albums

26.    Johansen entered into a recording agreement with Sony in or about 1978. Pursuant to that agreement, Johansen released five albums after January 1, 1978, namely, *David Johansen, The David Johansen Group Live, In Style, Here Comes the Night*, and *Live It Up* (collectively, the "Johansen Albums").

27.    On June 15, 2015, Johansen served a Notice of Termination upon Sony, with regard to all five Johansen Albums, and Johansen caused the Notice to be recorded in the United States Copyright Office, on July 28, 2015, as document V9908 D121 P1 through P3. A true and correct copy of the Johansen Notice, with the personal address for Johansen redacted for privacy reasons, is attached hereto as Exhibit A.

28.    Despite duly receiving the Johansen Notice, Sony flatly and unequivocally refused to honor it.

29.    On June 14, 2017, David Jacoby ("Jacoby"), the Senior Vice President of Business and Legal Affairs at Sony, sent a letter to Johansen's counsel, in which Jacoby stated Sony's legal position as to why Sony refused to honor the Johansen Notice. A true and correct copy of that letter is attached hereto as Exhibit B.

The Lyon Albums

30.    Lyon entered into a recording agreement with Sony in or about 1978. Pursuant to that agreement, Lyon released two albums after January 1, 1978, namely, *Hearts of Stone* and *Having a Party with Southside Johnny* (collectively, the "Lyon Albums").

9

31.    On June 1, 2015, Lyon served a Notice of Termination upon Sony, and Lyon caused the Notice to be recorded in the United States Copyright Office, on June 10, 2015, as document V9906 D675 P1 through P3. A true and correct copy of the Lyon Notice is attached hereto as Exhibit C.

32.    Despite duly receiving the Lyon Notice, Sony flatly and unequivocally refused to honor it.

33.    On June 1, 2015, Jacoby sent a letter to Lyon's counsel, in which Jacoby stated Sony's legal position as to why Sony refused to honor the Lyon Notice. A true and correct copy of that letter is attached hereto as Exhibit D.

The Collins Albums

34.    Collins entered into a recording agreement with Sony in or about 1979. Pursuant to that agreement, Collins released two albums after January 1, 1978, namely, *The Beat* and *The Kids Are the Same* (collectively, the "Collins Albums").

35.    On July 15, 2015, Collins served a Notice of Termination ("the Collins Notice") upon Sony, and Collins caused the Notice to be recorded in the United States Copyright Office, on August 11, 2015, as document V9908 D890 P1 through P3. A true and correct copy of the Collins Notice, with the personal address for Collins redacted for privacy reasons, is attached hereto as Exhibit E.

36.    Despite duly receiving the Collins Notice, Sony flatly and unequivocally refused to honor it.

37.    On July 14, 2017, Jacoby sent a letter to Collins' counsel, in which Jacoby stated Sony's legal position as to why Sony refused to honor the Collins Notice. A true and correct copy of that letter is attached hereto as Exhibit F.

38.    In or about August 2017, counsel for Johansen, Lyon, and Collins had a telephonic conference with Jacoby, and another lawyer employed by Sony, Gil Aronow. In that conference, Jacoby stated that under absolutely no circumstances would Sony *ever* agree, under *any* set of facts, that a Notice of Termination served

10

upon Sony, pursuant to §203, was or is valid or effective, and that no Sony artist would *ever* have the benefits of ownership in the United States copyrights in and to the subject sound recordings.

39.    The effective dates of termination have passed, for all of the Johansen Albums, for both Lyon Albums, and for both Collins Albums. Despite this fact, and Sony's knowledge of the effective dates, Sony willfully infringed upon the United States copyrights belonging to Johansen, Lyon, and Collins by continuing to exploit the sound recordings, as if no Notice had been sent at all, in complete disregard of the law.

40.    Under §106 of the Copyright Act, the copyright owner of a sound recording has the exclusive right to reproduce and distribute the sound recordings, including, but not limited to, in phonorecords, and to exploit or authorize the exploitation of interactive streams and digital downloads of the sound recordings through subscription or non-subscription online digital music services.

41.    Pursuant to the Johansen Notice, Johansen is currently the owner of the United States copyright in and to the sound recordings comprising all of the Johansen Albums.

42.    Pursuant to the Lyon Notice, Lyon is currently the owner of the United States copyright in and to the sound recordings comprising both of the Lyon Albums.

43.    Pursuant to the Collins Notice, Collins is currently the owner of the United States copyright in and to the sound recordings comprising both of the Collins Albums.

44.    By willfully continuing to exploit the sound recordings comprising the Johansen Albums, the Lyon Albums, and the Collins Albums in the United States after the respective effective dates, all of which occurred within the past three years, Sony has infringed upon those recordings, and, furthermore, the unlawful reproduction and distribution of the sound recordings owned by Plaintiffs as

alleged hereinabove, and such actions constitute copyright infringement under the Copyright Act.

45.    Plaintiffs are further informed and believe, and on that basis allege, that the continued willful exploitation by Sony of sound recordings of members of the class in the United States, after the effective dates of termination set forth in the Notices of Termination served on Sony pursuant to §203 by or on behalf of such class members, all of which dates occurred within the past three years, constitutes willful infringement by Sony.

46.    Sony's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs and the members of the class.

47.    As a direct and proximate result of Defendants' infringements of Plaintiffs' copyrights and the copyrights of the members of the class, pursuant to 17 U.S.C. §504(c), Plaintiffs and the class members are entitled to recover up to $150,000 in statutory damages for each sound recording infringed.  Alternatively, at their election, pursuant to 17 U.S.C. §504(b), Plaintiffs and the class members are entitled to their actual damages, as well as all profits attributable to the infringement, including but not limited to Sony's profits from infringement, as will be proven at trial.

48.    Plaintiffs and the class members are also entitled to recover attorney's fees and costs pursuant to 17 U.S.C. §505, and prejudgment interest according to law.

49.    Sony is causing, and unless enjoined by the Court will continue to cause, Plaintiffs and the class members irreparable harm for which they have no adequate remedy at law. Plaintiffs and the class members are entitled to an injunction under 17 U.S.C. §502 prohibiting the continued infringement of their sound recordings.

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief – Against All Defendants)

50.     Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 49 above, as though fully set forth herein.

51.     Pursuant to 28 U.S.C. §§2201 and 2202, a case of actual controversy within the jurisdiction of this court has arisen and now exists between Plaintiffs and the class members on the one hand, and Defendants on the other hand, concerning their respective rights and duties, in that Plaintiffs and the class members contend that:

(A)     Sound recordings cannot be considered "works made for hire," as that term is defined in the Copyright Act, because the definition set forth in §101 of the Copyright Act does not include sound recordings as being one of the types of works that can be a work made for hire;

(B)     The release of sound recordings that were created by a particular recording artist in "album" form, as is typical in the music industry, does not constitute a "contribution of a collective work," as that term is used in §101 of the Copyright Act, and do not serve to transform the sound recordings into "works made for hire";

(C)     Foreign choice of law provisions in a recording agreements have no effect upon the application of United States copyright law to issues relating to the application of the Copyright Act (and §203 specifically) to the United States copyright in sound recordings;

(D)     Sony's position regarding "work made for hire" clauses violates §203(a)(5) of the Copyright Act; and

(E)     Plaintiffs and class members have fully complied with §203 and its attendant regulations promulgated by the Copyright Office by including, on Notices of Termination, the album title and corresponding copyright registration number, thereby giving Sony full notice of all of the sound

13

recordings that are subject to the termination.

52.     Defendants, on the other hand, contend that:

(A)     The sound recordings at issue are "works made for hire," because the recording agreements at issue contain clauses that purport to be an agreement between the parties to those agreements that the sound recordings should be so characterized;

(B)     The sound recordings at issue are contributions to a "collective work," *i.e.,* record albums, and so are works made for hire;

(C)     If a recording agreement so provides, foreign law may be applied to the rights of recording artists in United States copyrights, and may be used to deny terminations that would be otherwise valid under the United States Copyright Act; and

(D)     It is not sufficient, in a Notice of Termination, to identify sound recordings by listing the copyright registration number for a particular album; Sony maintains that the individual recordings must be listed.

53.     Plaintiffs and the class members desire a judicial determination of their rights and duties, and a declaration that Sony's repeated disregard of the rights of plaintiffs and the class members violates the Copyright Act.

54.     Such a judicial determination of the rights and duties of the parties is necessary at this time, in that Defendants have repeatedly denied Plaintiffs' rights, and the rights of hundreds of class members, and has denied all of them the right to own the United States copyright in and to the sound recordings for the post-termination period. By doing these acts in the past, and unless enjoined from engaging in like behavior in the future, Sony will be allowed to destroy the value and salability of the subject sound recordings, in direct contradiction of the second chance guaranteed by the Copyright Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all other

154498.00601/116936619v.1

members of the class, pray for Judgment against Sony and the Doe Defendants, and each of them, as follows:

A.      Determining that this is a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

B.      For actual damages according to proof, or, at Plaintiffs' election, statutory damages in an amount of $150,000 per infringement, or according to proof;

C.      For declaratory relief, regarding the legal issues described in ¶¶ 51 through 54, above;

D.      A temporary, preliminary, and permanent injunction enjoining and restraining Defendants, and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction, and each of them, from continued denial and disregard of the Notices of Termination served by Plaintiffs and the members of the class upon Sony, to the extent that Sony bases said grounds on the legal and factual issues that are adjudicated in this suit;

E.      For pre- and post-judgment interest;

F.      For such fees and costs (including reasonable attorney's fees) incurred herein as permitted by law; and

G.      For such other and further relief as this Court deems just and proper.

**BLANK ROME LLP**

Dated:  February 5, 2019                    */s/ David C. Kistler*
                                            David C. Kistler, Esquire
                                            BLANK ROME LLP
                                            The Chrysler Bldg., 405 Lexington Avenue

New York, NY  10174-0208
(212) 885-5000
Kistler@BlankRome.com

GREGORY M. BORDO (*pro ha vice to be filed*)
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
(424) 239-3404
GBordo@BlankRome.com

DAVID M. PERRY (*pro ha vice to be filed*)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103-6998
(215) 569-5767
Perry@BlankRome.com

and

EVAN S. COHEN (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
esc@cohenmusiclaw.com

MARYANN R. MARZANO (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
mmarzano@cohenmusiclaw.com

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of the claims alleged in this Complaint.

**BLANK ROME LLP**

Dated:  February 5, 2019

*/s/ David C. Kistler*

David C. Kistler, Esquire
BLANK ROME LLP
The Chrysler Bldg., 405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000
Kistler@BlankRome.com

GREGORY M. BORDO (*pro ha vice to be filed*)
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
(424) 239-3404
GBordo@BlankRome.com

DAVID M. PERRY (*pro ha vice to be filed*)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103-6998
(215) 569-5767
Perry@BlankRome.com

and

EVAN S. COHEN (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
esc@cohenmusiclaw.com

MARYANN R. MARZANO (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
mmarzano@cohenmusiclaw.com

*Attorneys for Plaintiffs*

17