J5ldjohc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   DAVID JOHANSEN, et al.,

4                    Plaintiffs,              New York, N.Y.

5            v.                               19 Civ. 1094(ER)

6   SONY MUSIC ENTERTAINMENT INC.,
    et al.,
7

8                    Defendants.

    ------------------------------x
9
                                             May 21, 2019
10                                           2:33 p.m.

11  Before:

12                      HON. EDGARDO RAMOS,

13                                           District Judge

14                          APPEARANCES

15  BLANK ROME, LLP (PA)
         Attorneys  for Plaintiffs
16  BY:  RYAN EDWARD CRONIN
         DAVID MICHAEL PERRY
17
    GIBSON, DUNN & CRUTCHER, LLP
18       Attorneys for Defendants
    BY:  SCOTT A. EDELMAN
19       GABRIELLE FRANCES LEVIN

20

21

22

23

24

25

J5ldjohc

| | |
|---|---|
| 1 | THE CLERK:  In the matter of Johansen v. Sony Music. |
| 2 | Counsel, please state your name for the record |
| 3 | MR. CRONIN:  Ryan Cronin, from Blank Rome, on behalf |
| 4 | of plaintiffs. |
| 5 | MR. PERRY:  David Perry, from Blank Rome, on behalf of |
| 6 | plaintiffs. |
| 7 | MR. EDELMAN:  Good afternoon, your Honor.  Scott |
| 8 | Edelman on behalf of Defendant Sony. |
| 9 | MS. LEVIN:  And Gabrielle Levin, your Honor, from |
| 10 | Gibson Dunn, on behalf of Defendant Sony. |
| 11 | THE COURT:  Good afternoon to you all. |
| 12 | This matter is on for a premotion conference.  I |
| 13 | believe that the plaintiffs requested the conference.  Go |
| 14 | ahead. |
| 15 | MR. CRONIN:  No, your Honor. |
| 16 | THE COURT:  Defendants requested the conference? |
| 17 | MR. EDELMAN:  No, your Honor.  I believe we are just |
| 18 | here pursuant to our understanding of your local rules. |
| 19 | THE COURT:  That what? |
| 20 | MR. EDELMAN:  We're here, your Honor, because we want |
| 21 | to make a motion to dismiss, and so we are here to have the |
| 22 | premotion conference which we understood was required by your |
| 23 | Honor. |
| 24 | THE COURT:  Yes. |
| 25 | MR. EDELMAN:  I got lost there. |

J5ldjohc

1          THE COURT:  So you requested the conference?

2          MR. EDELMAN:  That is correct.  I'm sorry.  I

3     misunderstood.  Yes.

4          THE COURT:  OK.  So tell me why I should let you make

5     this motion.

6          MR. EDELMAN:  Thank you, your Honor.

7          Your Honor, so this is a putative class action that

8     relates to the rights to terminate under Section 203 of the

9     Copyright Act, and we have requested permission to file a

10    motion because there are material and irreparable, in our view,

11    mistakes in the Notice of Termination which were propounded by

12    plaintiffs' counsel which form the basis of the Notice of

13    Termination.

14         THE COURT:  Why are they irreparable?

15         MR. EDELMAN:  They are irreparable because the

16    particular transgressions are jurisdictional.  They are not

17    things that lend themselves to the harmless error doctrine.

18    They are things that relate specifically to whether the right

19    to terminate is even implicated.

20         As your Honor is aware -- and I know you've got

21    another case that is similar to this one but different in

22    certain respects -- in order to terminate or to attempt to

23    terminate the copyright under Section 203 of the Copyright Act,

24    there is a particular timing requirement.  You have to do it --

25    the right to terminate arises at the end of 35 years from the

J5ldjohc

date of publication or 40 years from execution, whichever is

earlier.

In this particular case, with respect to two of the

recording artists, two of the artist, Johansen and Lyon, the

termination notices were sent in 2017 but they purport to

terminate grants in 1984.  So by simple math, if you add 35

years, the earliest possible, to 1984, you get to a date of

2019 as to when the right would have arisen to terminate.  We

have termination notices that were sent two years early.  There

is no way to fix that.  They can -- obviously, it is your

Honor's call, but our position is that is a jurisdictional

defect that doesn't go to harmless error, it goes to the right

to terminate in the first instance.  So that's one of the --

THE COURT:  So two years prior to termination is too

late to have given notice?

MR. EDELMAN:  They gave notice too early.

THE COURT:  It's notice.  So what is the window within

which they can give notice?

MR. EDELMAN:  They can give notice at the end of 35

years from publication, so --

THE COURT:  I thought that it terminated after 35

years.  So don't you have to give notice prior to termination.

MR. EDELMAN:  You have to give notice between two and

10 years prior to termination, but you can't give notice before

35 years.  So here they gave notice in 2017 relating to a 1984

J5ldjohc

1  alleged grant.  So, the notice could not have been sent until

2  2019 and they sent it in 2017.

3          THE COURT:  I'm sorry.  So if the execution was in

4  1984, 35 years later is 2019?

5          MR. EDELMAN:  Correct.

6          THE COURT:  So how is it notice if you don't get the

7  notice before it terminates, before the grant terminates?

8          I'm lost.  So, you say there is a window.

9          MR. EDELMAN:  There is a window.  There is a window of

10  between 35 years from publication and 40 years from execution,

11  whichever is earlier.

12          THE COURT:  A window within which notice can be given?

13          MR. EDELMAN:  Correct.

14          THE COURT:  And what is that?

15          MR. EDELMAN:  So the first window, the window would

16  have opened for a 1984 grant, notice could have been given

17  effective for 2019, and it was sent in 2017.

18          THE COURT:  OK.  So you got it too early.

19          MR. EDELMAN:  We got it too early.  And the right to

20  terminate does not arise until 2019, and so the notice is not

21  effective.

22          THE COURT:  So what if they just sent a notice in

23  2019, a subsequent notice?  Why is it irreparable?

24          MR. EDELMAN:  It is irreparable because there is a

25  jurisdictional timing requirement under the statute.  They have

J5ldjohc

to give notice two years before they can terminate.  So that's
why they did it in 2017, waited two years, but they -- if they
give notice now, they have to wait between two and 10 years to
then try to terminate their rights.  They can't just proceed on
the basis of a defective notice.  This is the regime that is
very carefully articulated in Section 203 of the Copyright Act
in order for such a notice to be effective.

          There are other -- there is another timing problem,
your Honor, with respect to another one of the termination
notices relating to Collins.  That is a termination notice
that's dated July 15th of 2015.  It provides an effective date
of July 16th -- I'm sorry, of June 16, 2017, which is 23 months
later, and the Copyright Act requires a minimum of between two
and 10 years for notice.  So this is a defect that relates not
just to how the matter is pled in the complaint, it relates to
the underlying notice itself.

          And as you'll see or have seen in their response to
our request for this conference, your Honor, their argument is
not that our notices aren't correct; their argument, their
letter starts immediately with this is harmless error and so it
should be overlooked.  But there are no cases, and certainly no
statutory support, to suggest that these types of timing
mistakes, which are jurisdictional, are harmless error.  These
timelines have to be met in order to have the right to
terminate in the first place.

J5ldjohc

1          THE COURT:  I guess I'm trying to figure out what the

2     harm is if they file a subsequent notice.  So if what you need

3     is two to eight years from the date of termination and you get

4     one that's early and we regard it as a nullity, why are the

5     artists prevented from filing a notice that comes within the

6     definition of the statute?

7          MR. EDELMAN:  They can serve an appropriate notice if

8     they can meet the timeframe in which to do so, and essentially

9     that's -- if they can meet those requirements, that's what

10     we're saying they have to do.

11          THE COURT:  So they can serve a notice now?

12          MR. EDELMAN:  They can try to serve a notice now.

13     There are other timing requirements that may be implicated that

14     may or may not make their notice too late.  But they can

15     serve -- they can attempt to serve an effective notice.  They

16     cannot proceed, in our view -- and that would be one of the

17     bases of the motion to dismiss -- on the notices that they have

18     currently served.

19          THE COURT:  OK.  So if they serve now, presuming that

20     they can effectively serve notice, essentially what they're

21     losing is two years from when they thought they would have the

22     right to get their rights back, correct?

23          MR. EDELMAN:  Correct.

24          THE COURT:  OK.

25          MR. CRONIN:  Your Honor, number one, there is no

J5ldjohc

1    irreparable harm with the early notices and --

2                   THE COURT:  First of all, is the math correct?

3                   MR. CRONIN:  No, and I will get to that.

4                   You know, first there is no jurisdictional defect

5    because the statute actually contemplates that artists who are

6    trying to regain their copyright rights might get some

7    information wrong, and the statute actually says that if they

8    get the dates wrong, that's not fatal.  That's number one.

9                   Number two.  I believe counsel is sort of complaining

10   about two different periods.  The artists have 35 years for

11   when they can get their copyright back.  So if they are going

12   to exercise their right to reclaim their copyright, that takes

13   effect after 35 years.  And if they are going to exercise that

14   right, they have to give notice two to 10 years beforehand.

15                   THE COURT:  Not after?

16                   MR. CRONIN:  They can.  There is a time period after

17   the 35 years where they can say, you know, OK, we are going to

18   reclaim our copyright and give a date certain.

19                   THE COURT:  OK.  Mr. Edelman says that you can't give

20   the notice before the 35 years expires.

21                   MR. CRONIN:  I believe that is incorrect.

22                   THE COURT:  Isn't there a case on this?

23                   MR. CRONIN:  Well, we have the statute right here.

24                   THE COURT:  But is there a case on this?

25                   MR. CRONIN:  Yes.  There is the <u>Siegel</u> case that dealt

J5ldjohc

1   with the Superman copyright.

2           THE COURT:  It seems to me that this issue, either it

3   has been resolved or it is easy.

4           MR. CRONIN:  It is easy, I think.  I think it is an

5   easy issue, and the Superman case made it clear.  The exact

6   claim was in that case.  Excuse me.  I just want to make sure I

7   get it right.  It was that even though there are specific

8   requirements in the notice statute, they are not -- it is not

9   to be strictly construed.  In fact, the statute actually says

10  it is not to be strictly construed.  There is harmless error.

11  In the Siegel case the Court said that so long as there is

12  sufficient information to assist the grantee in having a

13  reasonable opportunity to identify the affected work, the

14  notice is effective.

15          THE COURT:  Could you move the microphone, please.

16          MR. CRONIN:  Now, here, counsel is focusing on the

17  catchall language, on the first page of the termination, that

18  says everything that this artist has -- all the copyrights this

19  artist has granted up to 1984.

20          THE COURT:  Can you bring the microphone closer to

21  you?

22          MR. CRONIN:  Oh, yes.  Sure.

23          What they fail to mention is that each notice of

24  termination contains a schedule.  The schedule lists works --

25  and this is within all three specific cases we're talking about

J5ldjohc

today -- that were granted between 1978 and 1982.  So the 1984

date is irrelevant.

        And I'll point out again, your Honor -- this is

attached to our complaint, these notices with the schedules --

the schedules give more than enough notice as to what we are

talking about.  The schedules give -- in terms of details, the

schedules give more details than the Notice of Termination that

was upheld in the Superman case, when Warner Brothers lost.

For example, we list the names of the works.  We list the names

of the authors.  We list the publication dates.  We list the

copyright registration numbers.  They know what copyrights we

want back.  And it is disingenuous to argue otherwise.

        Why are we fighting -- why are they fighting to keep

copyrights on the one hand but on the other hand saying we

don't have sufficient notice to identify them.  And we know

that they can identify them because they pay royalties.  These

companies maintain specific records because they have to pay

royalties when they come due.  They know exactly what

copyrights we want.

        THE COURT:  OK.  Aside from identifying or

appropriately identifying the rights that you are looking

after, I just want to make sure that with respect to the dates

that I was stumbling over with Mr. Edelman, again, as I

understand his argument, you could not have provided notice

that you wanted your copyrights back until after the 35 years

J5ldjohc

1    terminated; that is his position, correct?

2                   MR. CRONIN:  Yes.  And I don't believe it is correct,

3    your Honor.  The statute is quite clear.

4                   THE COURT:  OK.  And when is the earliest from your

5    point of view that you could have provided that notice?

6                   MR. CRONIN:  Would you mind in my colleague chimed in?

7                   THE COURT:  Absolutely.

8                   MR. PERRY:  The statute says it is two to 10 years

9    before the date of the effectiveness of termination.  To work

10   backwards, effectiveness of termination has to fall within a

11   five-year period, between 35 and 40 years.  You can give the

12   notice two to 10 years before that date.  So, therefore, it is

13   possible to provide notice long before the effectiveness of the

14   termination can actually take place.

15                  And what happened here in part is that when the

16   notices described the works that were sought to be taken back,

17   there was a fairly, you know, catchall description that said

18   including, without limitation, grants dated in or about 1984.

19   That language is essentially no harm/no fall, extraneous

20   language, "including without limitation."  Admittedly, '84

21   would be premature, but that doesn't undercut the validity of

22   all the other works that are perfectly terminable, the grants

23   of which are perfectly terminable.

24                  So focusing on the 1984 is really taking the attention

25   away from what this litigation is really about.  And the

J5ldjohc

1    reference to the other date, the notice date, which was listed

2    on one work, on one schedule, it said June.  It said June and

3    it should have said July.  In fact, the one below it said July.

4    That was a few years ago, and the notice said June instead of

5    July.  But that is a notice provision, and we believe that

6    that's a harmless error to have said June, 23 months, when the

7    minimum should have been 24 months.

8              THE COURT:  So when Mr. Edelman says it's

9    jurisdictional, is there any aspect of that provision that's

10   jurisdictional?

11             MR. CRONIN:  Not that I can see.  None whatsoever,

12   your Honor.

13             THE COURT:  Mr. Edelman.

14             MR. EDELMAN:  We just disagree with that.  There is a

15   Section of 203 that speaks to harmless error.  It gives

16   examples of what harmless error is.  The timing regimen for the

17   serving of notices does not fall within the doctrine of

18   harmless error.  This is what they need to do to invoke their

19   rights to terminate them.  There aren't that many things they

20   need to do to terminate, but this is clearly one of them.

21             The notice has to be given in a timeframe that

22   provides for at least two years notice.  The notice that only

23   allows 23 months doesn't meet that two-year requirement.  And

24   then, additionally, as we have been discussing -- they're now

25   saying the 1984 is meaningless.  That's the only actual date

J5ldjohc

1    they reference in their termination notice.  They don't give

2    any other dates.

3           THE COURT:  What about this schedule that counsel was

4    referring to?

5           MR. EDELMAN:  Yes, the schedule -- that's the schedule

6    that has the 1984 date that is attached to the complaint.  It

7    doesn't have other dates.  It purports to reference all rights,

8    and then it says including the 1984 date, 1984 grant.  That's

9    the only grant they reference by date.

10          THE COURT:  Let me ask you this.  I mean, if it's the

11   case that there is this harmless error provision in the statute

12   and I'm going to be the first judge to sort of construe what

13   that means and construe it in the context of the dates that are

14   provided, why shouldn't I say, well, you know, you were

15   entitled to 24 months notice, you got 23, and now they are

16   going to send you another notice to give you the time that you

17   need?  Why isn't that a rational, reasonable construction of

18   that statute?

19          MR. EDELMAN:  For them to serve new notice?

20          THE COURT:  Yes.

21          MR. EDELMAN:  They can attempt to do that.

22          What I'm saying is there are other timing requirements

23   that they may or may not meet.

24          THE COURT:  What are those?

25          MR. EDELMAN:  I'm not fully familiar with the

J5ldjohc

1   specifics of how new notices would play out, I haven't worked

2   through the timing of it.  But we are effectively -- I'm not

3   sure I'm saying anything different than you in the sense that I

4   do think these notices need to be withdrawn and they need to

5   try to issue new notices if they can comply with the new

6   notices.

7          By the way, the <u>Siegel</u> case from the Central District,

8   the district court case to which they refer, was not a timing

9   case.  It had nothing to do with finding the types of problems

10  at issue here to be harmless error.  That was a situation

11  involving Superman, where the termination notice weighed six

12  pounds and it was 570 pages, and the plaintiffs had gone

13  through extraordinary what the Court described as Herculean

14  efforts to list every possible work that they were trying to

15  seek to terminate.  They missed a couple of weeks.  And the

16  Court said that in that context, given all that they had done,

17  it was harmless error that they missed a couple of the works.

18         That's not what we are talking about here.  We're

19  talking about timing issues.  We're also talking about -- which

20  it is subject of our letter that I haven't spoken about today,

21  but 203 also has a requirement that you need to specify the

22  date of execution of the grant being terminated, and they

23  haven't done that.  Again, these are lawyers who on their

24  websites list themselves as termination specialists under 203.

25  This is their primary focus.

J5ldjohc

| | |
|---|---|
| 1 | And date of execution of the grant being terminated is |
| 2 | critical in order for a recipient to know if 203 applies. |
| 3 | There is another statute in the Copyright Act, 304, that might |
| 4 | apply instead. |
| 5 | THE COURT:  What? |
| 6 | MR. EDELMAN:  304 is a different statute that might |
| 7 | apply instead. |
| 8 | THE COURT:  OK. |
| 9 | MR. EDELMAN:  Depending on the date of the works. |
| 10 | They also need to specify the date of execution so |
| 11 | that the recipient will know when the 203 termination window |
| 12 | begins, whether the attempted termination is timely, and to |
| 13 | allow the recipient, in this case Sony, to identify the grants |
| 14 | at issue. |
| 15 | So, these are, in our view, your Honor, very serious |
| 16 | issues.  These are not technical defects that we're just |
| 17 | raising for the sake of filing a 12(b)(6).  We don't think that |
| 18 | these are correctable by amending the complaint because the |
| 19 | underlying defects in the notices will remain the same.  So, |
| 20 | that's why we are asking your Honor for permission to file this |
| 21 | motion. |
| 22 | THE COURT:  Anything else? |
| 23 | MR. CRONIN:  Yeah.  You know, your Honor, there is |
| 24 | nothing irreparable about this.  In fact, the notices were |
| 25 | completely appropriate. |

J5ldjohc

1          And I'll correct one thing.  I am looking at the three

2     schedules that were attached.  There is not a date on here

3     after 1982.  1984 is not on these schedules.  So we've

4     specified the works in these schedules.

5          THE COURT:  But you specified them in the complaint.

6     Did you specify them in the termination notice?

7          MR. CRONIN:  Yes.  That's what -- the schedules -- I'm

8     sorry, my apologies.  The schedules that I am referring to were

9     attached to the notices, and then we attached the notices with

10    their schedules to the complaint.  So, yes, they have had those

11    for years.

12         And, you know, the fact that they haven't specified

13    the date of execution is not fatal.  The <u>Siegel</u> Court taught us

14    that.  The statute says that.  And, in fact, the <u>Siegel</u> Court

15    says that the required contents of a notice must not become

16    unduly burdensome to the grantors and must recognize that

17    legitimate reasons may exist for gaps in the artist's knowledge

18    or certainty.  These artists gave -- granted these copyrights

19    in the '70s and '80s.  They don't have the contracts anymore.

20    That's not fatal.  It is not even close to fatal in these

21    circumstances.

22         THE COURT:  Anything else, Mr. Edelman?

23         MR. EDELMAN:  I could go on, your Honor, but I think

24    you have the thrust of it.

25         THE COURT:  I will let you make your motion.

J5ldjohc

1      Is there anything else that we need to do today?  I

2   will give you the schedule for the motion, but anything else?

3          MR. EDELMAN:  I would just ask you to rule on my -- I

4   meant to raise this at the beginning.  I have a pro hac vice

5   application for submission which I don't think the Court has

6   ruled on yet.

7          THE COURT:  Are you in good standing wherever you are

8   from?

9          MR. EDELMAN:  I am from Los Angeles and I am, your

10  Honor.  Thank you.

11         THE COURT:  It is granted.  So ordered.

12         Anything else?

13         MR. CRONIN:  No, your Honor.

14         THE COURT:  OK.  So four weeks to make the motion?

15         MR. EDELMAN:  Yes.

16         THE COURT:  Four weeks to respond, two weeks to reply.

17         And we will get you those dates in a second.

18         THE CLERK:  The motion is due June 18th, the

19  opposition is due July 16th, and the reply is due July 30th.

20         THE COURT:  OK.  We are adjourned.  Safe travels.

21         MR. EDELMAN:  Thank you, your Honor.

22         MR. CRONIN:  Thank you, your Honor.

23         MS. LEVIN:  Thank you.

24         (Adjourned)

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300