USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: March 31, 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID JOHANSEN, JOHN LYON, and
PAUL COLLINS, *individually and on behalf of all others similarly situated*,

                                    Plaintiffs,

- against -

SONY MUSIC ENTERTAIMENT INC.,
and JOHN DOES 1–10,

                                      Defendants.

**OPINION AND ORDER**

19 Civ. 1094 (ER)

Ramos, D.J.:

    David Johansen ("Johansen"), John Lyon ("Lyon") and Paul Collins ("Collins", and with Johansen and Lyon, "Plaintiffs"), bring this putative class action against Sony Music Entertainment ("Sony") for declaratory judgment and copyright infringement. Pending before the Court is Sony's motion to dismiss all claims. Doc. 43. For the reasons discussed below, the motion is DENIED.

## I.   BACKGROUND[1]

    Johansen is an American singer, songwriter and actor, who began his career in the early 1970s. Compl. ¶ 6. Johansen entered into a recording agreement with Sony in or about 1978. *Id*. ¶ 26. Pursuant to that agreement, Johansen released five albums, *David Johansen*, *The David Johansen Group Live*, *In Style*, *Here Comes the Night*, and *Live It Up*. *Id*. ¶ 26.

---

[1] The following facts are drawn from the Complaint, Doc. 5, "together with those 'documents . . . incorporated in it by reference' and 'matters of which judicial notice may be taken.'" *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 123 (2d Cir. 2011) (citation omitted); *see also City of Brockton Ret. Sys. V. Avon Prods., Inc.*, No. 11 Civ. 4665(PGG), 2014 WL 4832321, at * 12 (S.D.N.Y. Sept. 29, 2014) (Courts may also consider any document where the complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.") (internal quotation marks and citations omitted).

On June 15, 2015, Johansen served a notice of termination on Sony:

> **RE: NOTICE OF TERMINATION UNDER 17 U.S.C. § 203 and 37 C.F.R. § 201.10**
>
> Dear Sir or Madam:
>
> The undersigned persons are the authors of the works listed on Schedule A annexed hereto. Pursuant to 17 U.S.C. § 203 and 37 C.F.R. § 201.10, we are hereby serving notice of our intention to terminate the grant or transfer of copyrights and the rights of the copyright proprietor in the works listed below. To the best of our knowledge and belief, this notice has been signed by the only persons whose signatures are necessary to terminate the grant under 17 U.S.C. § 203.
>
> | | |
> |---|---|
> | Works: | See Schedule A |
> | Name of Author(s): | David Johansen |
> | Copyright Date: | See Schedule A |
> | Copyright Registration No: | See Schedule A |
> | Effective Date of Termination: | See Schedule A |
> | Grant Hereby Terminated: | All grants or transfers of copyright and all rights of copyright proprietor, including publication and recording rights, in and to the above sound recordings including, without limitation to the grant dated in or about 1984 between the recording artist David Johansen and Blue Sky Records/CBS, Inc. |
> | Name(s)/Address(es) of Person(s) Executing Termination: | David Johansen |

*See id.* Ex. A at 2.

Additionally, a "Schedule A" as follows is attached to the notice:

## Schedule A

| Work | Author | Publication Date | Copyright Registration No | Termination Notice Date | Effective Date of Termination |
|---|---|---|---|---|---|
| David Johansen | David Johansen | April 28, 1978 | SR0000001580 | June 15, 2015 | June 16, 2017 |
| The David Johansen Group Live | David Johansen | January 19, 1979 | SR0000025693 | June 15, 2015 | June 16, 2017 |
| In Style | David Johansen | July 27, 1979 | SR0000011210 | June 15, 2015 | June 16, 2017 |
| Here Comes The Night | David Johansen | June 5, 1981 | SR0000029673 | June 15, 2015 | June 16, 2017 |
| Live It Up | David Johansen | May 28, 1982 | SR0000038234 | June 15, 2015 | June 16, 2017 |

*Id.* Ex. A at 3.  The Copyright Office duly recorded Johansen's notice on July 28, 2015.  *Id.*

On June 14, 2017, two years after Johansen's termination notice was sent, Sony sent a letter of refusal to Johansen.  *Id.* ¶ 29; *see also id.* Ex. B.  The letter cites, as reasons for its refusal, that:

> (a) "the Works are works made for hire," and thus not subject to termination; (b) "the [n]otice does not adequately identify the specific grant David Johansen seeks to terminate, as the [n]otice broadly makes reference to all grants or transfers of copyright in and to certain sound recordings 'including, without limitation to the grant dated in or about 1984 between the recording artist David Johansen and Blue Sky Records/CBS, Inc.'"; (c) Sony is unaware of any grant made in 1984, and "to the extent that any grant was made," the grant was made before 1978 and thus 17 U.S.C. § 203 does not apply; and (d) to the extent there was a grant in 1984, termination could not be effected before 2019.  *Id.*

3

Lyon, professionally known as Southside Johnny, is an American singer and songwriter who first achieved prominence in the mid-1970s, and was signed by Sony's predecessor, CBS Records, Inc. ("CBS"), in or about 1976." *Id*. ¶ 7. Pursuant to a recording agreement with Sony in or about 1978, Lyon released two albums, *Hearts Of Stone* and *Having A Party with Southside Johnny*. *Id*. ¶ 30. On June 1, 2015, Lyon served a notice of termination on Sony substantially similar to Johansen's termination notice. *Id*. Ex. C at 2. The attached "Schedule A," substantially similar in form to that in Johansen's termination notice, indicated that the "Publication Date[s]" are October 13, 1978 for *Hearts Of Stone*, and May 23, 1980 for *Having A Party With Southside Johnny*. *Id*. Ex. C at 3. Two years later on June 1, 2017, Sony sent Lyon a letter of refusal similar to the one that Johansen received. *Id*. Ex. D.

Collins, a musician and songwriter best known for his musical group Paul Collins' Beat, entered into a recording agreement in 1979 with CBS. *Id*. ¶ 8. Pursuant to that agreement, Collins released two albums, *The Beat* and *The Kids Are The Same*. *Id*. ¶ 34. On July 15, 2015, Collins sent a notice of termination that was substantially similar to Johansen and Lyon's termination notice, except that it identified "Grant Hereby Terminated" as "*All grants or transfers of copyright proprietor, including publication and recording rights, in and to the above sound recordings including, without limitation to the grant dated in or about 1979 between the recording artist Paul Collins d/b/a [t]he Beat/Paul Collins Beat and CBS, Inc.*" *Id*. Ex. E. at 2. The "Publication Date[s]" are September 21, 1979 for *The Beat* and January 29, 1982 for *The Kids Are The Same*. *Id*. at 3. Collins' termination notice also contained a schedule A:

Schedule A

| Work | Author | Publication Date | Copyright Registration No | Termination Notice Date | Effective Date of Termination |
|---|---|---|---|---|---|
| The Beat | Paul Collins | September 21, 1979 | SR0000013516 | July 15, 2015 | June 16, 2017 |
| The Kids Are The Same | Paul Collins | January 29, 1982 | SR0000033181 | July 15, 2015 | July 16, 2017 |

*Id.* Ex. F.

Plaintiffs commenced the instant action on February 5, 2019. Plaintiffs claim that as of the effective dates of termination, they regained ownership of the sound recordings identified in their respective termination notices, and the exclusive right to reproduce and distribute them. *Id.* ¶ 40. However, Sony allegedly continues to exploit those sound recordings throughout the United States. Plaintiffs seek in the instant action declaratory relief and monetary damages resulting from Sony's infringement.

On June 11, 2019, Sony moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), on the basis that the three termination notices are invalid. Doc. 43.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

5

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

### III.   DISCUSSION

Sony contends that all three termination notices are invalid because they are untimely and otherwise deficient.  See Mem. of Law in Supp. of Sony's Mot. to Dismiss ("Sony's Mem."), Doc. 44.  Specifically, Sony contends that Johansen and Lyon's termination notices are untimely because they sought terminate 1984 grants that are only terminable beginning in 2019, not 2017, and that Collins' notice is one month too late.  Id. at 8–14.  Sony further contends that the notices are deficient because they do not reasonably identify the grants to which the termination notices apply, and do not sufficiently identify the dates of execution of the grants.  Id. at 14–19.  Lastly, Sony contends that these errors are not harmless.  Id. at 19–24.  For these reasons, Sony asserts that they remain the lawful owners of the copyrights at issue.

#### A.  Requirements for Termination Notices

The Copyright Act provides two separate termination regimes.  Section 304 describes a process for terminating grants of renewal rights that were executed prior to 1978 for works that were copyrighted and created as of January 1, 1978.  17 U.S.C. § 304.  Section 203 sets forth a termination process for grants of rights that were executed in or after 1978, irrespective of when the work in question was copyrighted.  17 U.S.C. § 203.  All of the termination notices at issue in this action were filed pursuant to § 203, and the parties' arguments for the instant motion are all based on § 203.

The Copyright Office has issued rules regarding the proper contents of a termination notice under § 203.  See 37 C.F.R. § 201.10(b)(2).  They require, inter alia, that the notice clearly identify, in the form of a complete and unambiguous statement of facts:  (1) "[t]he date of execution of the grant being terminated and, if the grant covered the right of publication of a work, the date of publication of the work under the grant"; (2) "[a] brief statement reasonably

identifying the grant to which the notice of termination applies"; and (3) "[t]he effective date of termination." *Id.* § 201.10(b)(2)(iii), (v), and (vi). To terminate grants under § 203, parties have five years from "'the end of thirty-five years from the date of execution of the grant,' but if the grant 'covers the right of publication of the work,' that five-year period begins the earlier of (1) thirty-five years from the work's publication or (2) forty years from the execution of the grant." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 22 (2d Cir. 2015) (quoting 17 U.S.C. § 203).

In a separate section under the same regulation, the Copyright Office has provided a general rule that would relieve terminating parties from "harmless errors in a [termination] notice that do not materially affect the adequacy of the information required to serve the purposes of 17 U.S.C. [§] 203." 37 C.F.R. § 201.10(e)(1). Section 201.10(e)(2) provides examples of instances in which the error should be considered harmless. These examples are not meant to be exclusive. *Id*. (explaining that the list applies "[w]ithout prejudice to the general rule provided by paragraph (e)(1) of this section").

"[A]n error's 'materiality,' and hence its 'harmlessness,' [is] to be viewed through the prism of the information needed to adequately advance the purpose sought by the statutory termination provisions themselves." *Siegel v. Warner Bros. Entm't Inc.*, 690 F. Supp. 2d 1048, 1052 (C.D. Cal. 2009) [hereinafter *Siegel II*] (citing 37 C.F.R. § 201.10(e)(1)); *see also Horror Inc. v. Miller*, 335 F. Supp. 3d 273, 319 (D. Conn. 2018) (finding that putting incorrect addresses in the termination notice did not invalidate it); *Siegel v. Warner Bros. Entm't Inc.*, 658 F. Supp. 2d 1036, 1091–95 (C.D. Cal. 2009) [hereinafter *Siegel I*] (finding that Plaintiff's failure to include information about two weeks' worth of comics in the termination notice was harmless error given the volume of information that Plaintiff had provided).

The Copyright Office has unambiguously explained that the purpose behind § 203 is to provide protections for authors of creative works. *Analysis of Gap Grants under the Termination Provisions of Title 17*, at i.  One motivation behind the Sections is to counterbalance the unequal bargaining position of artists, resulting in part from the "impossibility of determining a work's value until it has been exploited."  H.R. Rep. No. 94-1476, at 124 (1976).  A "competing objective" of the sections is "for the existing assignee to receive reasonable notice of what rights of theirs are being affected through the exercise of the [artist]'s . . . termination right."  *Seigel II*, 690 F. Supp. at 1055–56; *see also* 42 Fed. Reg. 45916, 45918 (stating that the regulation "attempts to avoid the imposition of costly or burdensome requirements while, at the same time, giving the grantee and the public a reasonable opportunity to identify the affected grant and work from the information given in the notice").

### B. Sufficiency of the Termination Notices

#### a. Timeliness

First, Sony contends that Johansen and Lyon's termination notices in 2017 are untimely because they only reference grants executed in 1984, which would only be terminable as early as in 2019.  Sony further contends that Collins' notice with respect to *the Beat* is one month too late.  The Court disagrees.

Contrary to Sony's assertion, Johansen and Lyon's termination notices did not only seek to terminate grants made in 1984.  Instead, they sought to terminate "[a]ll grants . . . in and to the above sound recordings [in Schedule A], including, *without limitation* to the grant dated in or about 1984."  Doc. 5 Ex. A; *Id*. Ex. C.  Additionally, the Complaint alleges that both Johansen and Lyon entered into recording agreements with Sony "in or about 1978."  Compl. ¶¶ 26, 30.  The Complaint further alleges that pursuant to those agreements, Johansen and Lyon released the sound recordings at issue in this case.

9

In the case of Johansen, the notice of termination indicates that the dates of publication of the albums spanned from April 1978 to May 1982. And in the case of Lyon, the notice of termination indicates that both albums were published in 1978. It is entirely plausible, therefore, that Johansen and Lyon granted their rights in those sound recordings to Sony in 1978. Taking 1978 as the date of execution of the grant to be terminated, the effective termination window began, thirty-five years after 1978, in 2013 and ended five years later in 2018. As such, Johansen and Lyon's termination notices in 2017 would have been timely. In any event, more information is needed to determine if this is the case, making this inquiry unsuitable for a Rule 12(b)(6) motion to dismiss.

Sony also contends that Collins' termination notice was untimely with respect to *The Beat* because it is one month too late. The effective date of termination for *The Beat* was listed as June 16, 2017, only 23 months after the listed Termination Notice Date on July 15, 2015. A termination notice may be served between two and ten years before the termination date. *Baldwin*, 805 F.3d at 32 (quoting 17 U.S.C. § 203). Specifically, Sony argues that this is an "error in timing" that cannot be excused under 17 U.S.C. § 203(a)(4)(A). Sony's Mem. at 13. In response, Plaintiffs argue that this was as a result of a "scrivener's error," that is excusable as a harmless error. *See* Mem. of Law in Opp'n re Mot. to Dismiss ("Pls' Mem."), Doc. 47 at 13.

A close examination of the record shows that it is plausible that this was a "scrivener's error." The listed dates of termination and termination notice dates for sound recordings in all three notices, with the only exception of *The Beat*, are separated by exactly two years. Furthermore, within the same termination notice, the listed Termination Notice Date for *The Kids Are The Same* was also July 15, 2015, but the effective date of termination was listed as July 16, 2017 instead. Lastly, both sound recordings were released pursuant to the same

10

recording agreement. Drawing all reasonable inferences in favor of Plaintiffs, the Court finds that it is possible that this was a "scrivener's error" and that the harmless error rule may apply to excuse it. *See Siegel II*, 690 F. Supp. at 1053. ("[t]he harmless error rule applies to . . . simple clerical or typographical errors").

### b. Gap Works

Next, Sony contends that Lyon's albums may be, what are known as gap works. Sony's Mem. at 18–19. That term refers to pre-1978 agreements that concern works that were not created until 1978 or later. In December 2010, the Copyright Office stated that "[S]ection 203 is the relevant provision for Gap Grants." U.S. Copyright Office, *Analysis of Gap Grants under the Termination Provisions of Title 17*, p. i (2010), http://www.copyright.gov/reports/gap-grant-analysis.pdf. Additionally, the Copyright Office has clarified that when applied to gap works, the phrase "the date of the execution of the grant being terminated" means "the date on which the work was created." *Id.* § 201.10(f)(1)(ii)(C).

Sound recordings are created for purposes of the Copyright Act on the date they are "fixed," or recorded. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 808 F. Supp. 2d 634, 637 (S.D.N.Y. 2011) ("A 'sound recording' is a 'work that results from the fixation of a series of musical, spoken, or other sounds . . . .'" (internal citations omitted)); *see also* United States Copyright Office, *Copyright Registration for Sound Recordings* 6, https://www.copyright.gov/circs/circ56.pdf ("A sound recording is considered created when it is 'fixed' in a phonorecord for the first time."). Therefore, Sony argues that Lyon's termination notice, to the extent that it sought to terminate a grant made before 1978, failed to recite the dates of creation of the relevant sound recordings.

However, Sony makes that argument solely on the basis of a one-sentence allegation in the Complaint that "Lyon signed to . . . CBS Records, Inc., in or about 1976." Compl. ¶ 7. However, the Complaint clearly alleges that the two albums at issue here were released pursuant to a 1978 recording agreement with Sony. *Id*. ¶ 30.  Because the Court accepts that as true for purposes of this motion, dismissal is inappropriate on the basis that Lyon's notice failed to comply with the statutory requirements for gap works.

    c. **Identification of Grants Being Terminated**

Sony further contends that the termination notices are phrased so broadly that they fail to satisfy 37 C.F.R. § 201.10(b)(2)(v), which requires "a brief statement reasonably identifying the grant to which the notice of termination applies." The Court disagrees.

As Plaintiffs correctly point out, courts in this district have found even more generic descriptions sufficient. Pls' Mem. at 11. In *Music Sales Corp. v. Morris*, the Court found that the following description of the grant was adequate: "'Grant or transfer of copyright and the rights of copyright proprietor, including publication and recording rights.'" 73 F. Supp. 2d 364, 378 (S.D.N.Y. 1999). In reaching that finding, the court considered the custom of the industry and the Register of Copyrights and noted that the Register customarily accepted boilerplate language in termination notices. *Id*. Here, the termination notices included more than just boilerplate language, specifically identifying grants of rights in sound recordings set forth in the schedules attached to the notices. Accordingly, dismissal on this basis is also inappropriate.

Although the Court in *Music Sales* made that finding with respect to a § 304 termination notice, the relevant regulations for both § 203 and § 304 notices similarly require "a brief statement reasonably identifying the grant to which the notice of termination applies." 37 C.F.R. § 201.10(b)(1)(iv); *see also* 37 C.F.R. § 201.10(b)(2)(v). Accordingly, they should be accorded

the same meaning. *See Nat'l Credit Union Admin v. First Nat'l Bank and Trust Co.*, 522 U.S. 479, 501 (1998) (highlighting the "established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning").

### d. Dates of Execution of Grants Being Terminated

Johansen and Lyon's termination notices identified the grants being terminated as:

> All grants or transfers or transfers of copyright and all rights of copyright proprietor, including publication and recording rights, in and to the above sound recordings, including without limitation to the grant dated in or about 1984 between the recording artist [ ] and [CBS, Inc.]

*See* Doc. 5 Ex. A; *Id*. Ex. C. The relevant section in Collins' termination notice is substantially similar with the only difference being that it referenced a grant "dated in or about 1979." *Id*. Ex. E.

Sony contends that this language does not contain a clear identification of the specific dates of execution of the grants sought to be terminated. Sony further argues that these errors cannot be harmless. Sony's Mem. at 21–24. In response, Plaintiffs contend that the schedules attached to the termination notices make clear that the notices sought to terminate grants conferring the rights in sound recordings with publication dates between 1978 and 1982. Pls' Mem. at 4. Plaintiffs further argue that any error should be harmless because the information contained in their termination notices with respect to each individual sound recording adequately advances the "competing objective" of "reasonable notice" to Sony of "what rights of theirs are being affected," and that there was no intent to deceive or mislead Sony, or to conceal information. *Id*.

Courts have held that complete omissions in a termination notice, without any other information touching upon the subject matter of the error, cannot be harmless error. *Siegel II*, 690 F. Supp. 2d at 1056. This is consistent with the objective underlying § 203 to provide the

recipients of the termination notices sufficient information to understand what rights of theirs are at stake. The Copyright Office has also explained that the purpose of 37 C.F.R. § 201.10 is to "avoid the imposition of costly or burdensome requirements, while, at the same time, provide the recipients with a reasonable opportunity to identify the affected grant and work from the information given in the notice." *See* 42 Fed. Reg. 45916, 45918; *see also* 42. Fed. Reg. 50300, 50300 (making the same observation as the purpose of the proposed new § 201.10).

On the other hand, omission of some or parts of the information required may still be considered harmless so long as there are other pieces of information sufficient to satisfy the relevant regulatory requirement. As the Court in *Siegel II* acutely explained by way of an example, even if a termination notice fails to include the title for a particular sound recording, the author's name for that sound recording, and the date when copyright in that sound recording was secured, that termination notice would nevertheless afford the recipients a reasonable opportunity to identify the work if it provides a valid registration number of that particular sound recording. *Siegel II*, 690 F. Supp. 2d at 1057.

Contrary to Sony's argument, this is not a case where the termination notices were completely devoid of any information regarding the grants in question. The relevant regulatory requirement here, 37 C.F.R. § 201.10(b)(2)(iii), requires a clear identification of "the date of execution of the grant being terminated and, if the grant covered the right of publication of a work, the date of publication of the work under the grant." While the termination notices admittedly omitted the specific date of execution of the grant being terminated, all three of the notices clearly identified the publication dates of the sound recordings at issue, as well as their authors, their titles, their copyright registration numbers and their effective dates of termination. Furthermore, the complaint alleges that all the sound recordings were released pursuant to recording agreements between Plaintiffs and Sony. Looking at these facts in the light most

14

favorable to Plaintiffs, the notices provide Sony with ample information to identify the grants that cover the specific sound recordings identified.

Furthermore, Sony's citation to *Burroughs v. Goldwyn-Mayer, Inc.*, 683 F.2d 610, 622 (2d Cir. 1982) is inapposite. This Court previously found that "the Court in *Burroughs* did not consider whether the harmless error provision of the rules applied." *See Mtume v. Sony Music Entertainment*, No. 18 Civ. 6037(ER), 2019 WL 4805925, at *4 (S.D.N.Y. Sept. 30, 2019).

Sony's remaining arguments are unpersuasive. Specifically, Sony contends 37 C.F.R. § 201.10(e)(2) only excuses some imprecision in giving the dates of execution but not outright omission thereof, and that the omission was not in good faith. Sony's Mem. at 22; Doc. 48 at 8. However, assuming arguendo that Sony is right, 37 C.F.R. § 201.10 (e)(2) states that the list of errors contained therein is "without prejudice" to the general rule provided by 37 C.F.R. § 201.10(e)(1). Indeed, the Copyright Office made clear that the examples recited in § 201.10(e)(2) were not meant to define or otherwise set strict parameters on the circumstances where the general harmless error rule in § 201.10(e)(1) is applicable.

Instead, it expressly stated that the only reason for the inclusion of the specific examples in (e)(2) was so that "disputes" would be avoided that those errors could ever be considered harmful. *See* 42 Fed. Reg. 45916, 45919. Moreover, courts have recognized that the "reach of the harmless error safety valve is broader than the specified class of examples in (e)(2)." Pls' Mem. at 15 (citing *Siegel II*). Accordingly, because the Court finds that the termination notices contained sufficient information to afford Sony a reasonable opportunity to identify the grants at issue, such that the general harmless error rule may apply, Sony's arguments on the basis of 37 C.F.R. § 201.10(e)(2) cannot invalidate the notices.

## IV.  CONCLUSION

For the reasons set forth above, Sony's motion to dismiss is DENIED.  The Parties are directed to appear for a telephonic conference on April 22 at 2:00 P.M.  The parties are directed to call (877) 411-9748 using the access code 3029857.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 43.

     SO ORDERED.

Dated:   March 31, 2020
         New York, New York

_____
Edgardo Ramos, U.S.D.J.