UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DAVID JOHANSEN, an individual; JOHN
LYON, an individual, professionally known as
SOUTHSIDE JOHNNY; PAUL COLLINS, an
individual, and on behalf of all others similarly
situated,

                   Plaintiffs,

      -against-

SONY MUSIC ENTERTAINMENT INC., a
Delaware corporation, and DOES 1 through
10,

                Defendants.
-------------------------------------------------------x

SONY MUSIC ENTERTAINMENT, a
Delaware corporation,

              Counterclaim Plaintiff,

      -against-

JOHN LYON, an individual; and PAUL
COLLINS, an individual,

             Counterclaim
             Defendants.
-------------------------------------------------------x

Case No. 19-cv-01094 (ER)

## AMENDED ANSWER AND COUNTERCLAIMS OF SONY MUSIC ENTERTAINMENT

     Defendant Sony Music Entertainment ("SME"),[1] by its undersigned attorneys, for its

Answer to the Complaint (the "Complaint") of David Johansen, John Lyon, and Paul Collins

(collectively, "Plaintiffs"), states as follows:

---

[1]  Incorrectly sued as "Sony Music Entertainment Inc."

## GENERAL DENIAL

Except as otherwise expressly admitted herein, SME denies each and every allegation contained in the Complaint, including, without limitation, any allegations contained in the preamble or headings of the Complaint, and specifically denies any liability to Plaintiffs.  Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, allegations in the Complaint to which no responsive pleading is required shall be deemed as denied.  SME expressly reserves the right to seek to amend and/or supplement its Answer as may be necessary.

### ANSWER TO SPECIFIC ALLEGATIONS IN PLAINTIFFS' COMPLAINT

AND NOW, incorporating the foregoing, SME states as follows in response to the specific allegations in the Complaint:

### ANSWER TO "NATURE OF THE ACTION" ALLEGATIONS

1.      To the extent the allegations in Paragraph 1 state legal conclusions, no response is required.  To the extent a response is required, SME lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies those allegations.

2.      To the extent the allegations in Paragraph 2 state legal conclusions, no response is required.  To the extent a response is required, SME lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies those allegations.

3.      To the extent the allegations in Paragraph 3 state legal conclusions, no response is required.  To the extent a response is required, SME lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 3 relating to any other person or entity and therefore denies those allegations.  SME denies the remaining allegations in Paragraph 3.

4.     To the extent the allegations in Paragraph 4 state legal conclusions, no response is required.  To the extent a response is required, SME denies the allegations in Paragraph 4, and refers the Court to the referenced correspondence for the full and accurate contents thereof.

5.     To the extent the allegations in Paragraph 5 state legal conclusions, no response is required.  To the extent a response is required, SME denies the allegations in Paragraph 5.

## ANSWER TO "THE PARTIES" ALLEGATIONS

6.     SME lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies those allegations, except to admit that Plaintiff David Johansen is a singer and former member of the New York Dolls, and has used the performing pseudonym Buster Poindexter.

7.     SME lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies those allegations, except to admit that John Lyon is also known professionally as Southside Johnny and was a member of the band Southside Johnny and the Asbury Jukes.

8.     SME lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies those allegations, except to admit that Plaintiff Paul Collins is a musician and was in the musical group Paul Collins' Beat.

9.     SME (incorrectly identified as a corporation) admits that it is a recorded music company headquartered in New York, New York.  SME denies the remaining allegations in Paragraph 9.

10.     To the extent the allegations in Paragraph 10 state legal conclusions, no response is required.  To the extent a response is required, SME denies the allegations in Paragraph 10.

11.     To the extent the allegations in Paragraph 11 state legal conclusions, no response is required.  To the extent a response is required, SME denies the allegations in Paragraph 11.

**ANSWER TO "JURISDICTION AND VENUE" ALLEGATIONS**

12.     SME admits that Plaintiffs purport to describe the nature of the action.  SME denies the remaining allegations in Paragraph 12.

13.     Paragraph 13 contains allegations of jurisdiction and legal conclusions to which no response is required.

14.     Paragraph 14 contains allegations of jurisdiction and legal conclusions to which no response is required.

15.     Paragraph 15 contains allegations of venue and legal conclusions to which no response is required.

**ANSWER TO "CLASS ALLEGATIONS" ALLEGATIONS**

16.     SME admits that the Complaint seeks certification of the referenced class and that Plaintiffs purport to describe the nature of this matter.  SME denies that certification of a class is warranted or appropriate, and on that basis denies the remaining allegations in Paragraph 16.

17.     To the extent the allegations in Paragraph 17 state legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 17.

18.     To the extent the allegations in Paragraph 18 state legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 18.

19.     To the extent the allegations in Paragraph 19 state legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 19.

20.     To the extent the allegations in Paragraph 20 state legal conclusions, no response is required.  SME denies the remaining allegations in Paragraph 20.

21.     To the extent the allegations in Paragraph 21 state legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 21.

22.     To the extent the allegations in Paragraph 22 state legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 22.

23.     To the extent the allegations in Paragraph 23 state legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 23.

### ANSWER TO "FIRST CLAIM FOR RELIEF" ALLEGATIONS

24.     No response is required to this paragraph, which incorporates prior allegations.  To the extent any other response is required, SME repeats and incorporates each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

25.     Paragraph 25 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 25.

26.     SME admits that the albums *David Johansen*, *The David Johansen Group Live, In Style, Here Comes the Night*, and *Live It Up* were released after January 1, 1978.  SME denies the remaining allegations in Paragraph 26.

27.     Paragraph 27 purports to describe a document filed as Exhibit A to the Complaint.  SME respectfully refers the Court to such document, which speaks for itself.  To the extent Paragraph 27 contains legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 27.

28.     SME respectfully refers the Court to the document filed as Exhibit B to the Complaint, which speaks for itself.  SME denies the remaining allegations in Paragraph 28, and avers that the Johansen Notice was ineffective.

29.     Paragraph 29 purports to describe a document filed as Exhibit B to the Complaint. SME respectfully refers the Court to such document, which speaks for itself.  SME admits that David Jacoby is currently Senior Vice President of Business and Legal Affairs at SME.  SME denies the remaining allegations in Paragraph 29, and avers that the Johansen Notice was ineffective.

30.     SME admits that the albums *Hearts of Stone* and *Having a Party with Southside Johnny* were released after January 1, 1978, but notes that most of the individual sound recording tracks on the album *Having a Party with Southside Johnny* were previously released before that date.  SME denies the remaining allegations in Paragraph 30.

31.     Paragraph 31 purports to describe a document filed as Exhibit C to the Complaint. SME respectfully refers the Court to such document, which speaks for itself.  To the extent Paragraph 31 contains legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 31.

32.     SME respectfully refers the Court to the document filed as Exhibit D to the Complaint, which speaks for itself.  SME denies the remaining allegations in Paragraph 32, and avers that the Lyon Notice was ineffective.

33.     Paragraph 33 purports to describe a document filed as Exhibit D to the Complaint. SME respectfully refers the Court to such document, which speaks for itself.  SME denies the remaining allegations in Paragraph 33, and avers that the Lyon Notice was ineffective.

34.     SME admits that the albums *The Beat* and *The Kids Are the Same* were released after January 1, 1978.  SME denies the remaining allegations in Paragraph 34.

35.     Paragraph 35 purports to describe a document filed as Exhibit E to the Complaint. SME respectfully refers the Court to such document, which speaks for itself.  To the extent Paragraph 35 contains legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 35.

36.     SME respectfully refers the Court to the document filed as Exhibit F to the Complaint, which speaks for itself.  SME denies the remaining allegations in Paragraph 36, and avers that the Collins Notice was ineffective.

37.     Paragraph 37 purports to describe a document filed as Exhibit F to the Complaint. SME respectfully refers the Court to such document, which speaks for itself.  SME denies the remaining allegations in Paragraph 37, and avers that the Collins Notice was ineffective.

38.     SME denies the allegations in Paragraph 38.

39.     To the extent Paragraph 39 contains legal conclusions, no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 39.

40.     Paragraph 40 contains statements of law and legal conclusions to which no response is required.

41.     Paragraph 41 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 41.

42.     Paragraph 42 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 42.

43.     Paragraph 43 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 43.

44.     Paragraph 44 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 44.

45.     Paragraph 45 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 45.

46.     Paragraph 46 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 46.

47.     Paragraph 47 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 47.

48.     Paragraph 48 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 48.

49.     Paragraph 49 contains legal conclusions to which no response is required.  To the extent any other response is required, SME denies the allegations in Paragraph 49.

## ANSWER TO "SECOND CLAIM FOR RELIEF" ALLEGATIONS

50.     No response is required to this paragraph, which incorporates prior allegations.  To the extent a response is required, SME repeats and incorporates each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

51.     Paragraph 51 contains legal conclusions, to which no response is required.  To the extent a response is required, SME denies the allegations in Paragraph 51.

52.     To the extent Paragraph 52 contains legal conclusions, no response is required.  To the extent a response is required, SME admits that the sound recordings that are the subject of Plaintiffs' Termination Notices are "works made for hire," that foreign law is relevant to the exercise of termination rights in certain circumstances, and that Plaintiffs have issued deficient Notices of Termination.  SME further avers that failure to list the particular works intended to be covered by the Notices of Termination has limited the scope of the Notices of Termination.  SME denies the remaining allegations in Paragraph 52, and specifically denies that Paragraph 52 contains a full recitation of SME's contentions in this action.

53.    To the extent Paragraph 53 contains legal conclusions, no response is required.  To the extent any other response is required, SME admits that Plaintiffs purport to describe the nature of this action.  SME denies the remaining allegations in Paragraph 53.

54.    Paragraph 54 contains legal conclusions, to which no response is required.  To the extent a response is required, SME denies the allegations in Paragraph 54.

## ANSWER TO PRAYER FOR RELIEF

SME denies that Plaintiffs are entitled to relief against it, and SME requests that the Court dismiss all claims against it with prejudice and order such further relief as the Court deems just and proper.

## ANSWER TO DEMAND FOR JURY TRIAL

SME denies the allegations of Plaintiffs' demand for a jury trial, except to admit that Plaintiffs purport to demand a jury trial.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to them as to any element of Plaintiffs' claims, SME asserts the following affirmative and other defenses:

## FIRST DEFENSE

The Complaint and each purported claim for relief stated therein fail to allege facts sufficient to state a claim upon which relief may be granted.

## SECOND DEFENSE

This action is barred, in whole or in part, because Plaintiffs and/or the putative class members lack standing to assert the claims alleged in this action, including under Article III of the United States Constitution.

## THIRD DEFENSE

This action is barred, in whole or in part, because to the extent a grant was made to SME, it was not made by Plaintiffs and/or the putative class members.

## FOURTH DEFENSE

SME is informed and believes, and on that basis alleges, that Plaintiffs' claims and the claims of the putative class against SME are barred, in whole or in part, by laches, equitable estoppel, waiver, or other related equitable doctrines.

## FIFTH DEFENSE

SME is informed and believes, and on that basis alleges, that Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, by their own actions, omissions, and/or negligence.

## SIXTH DEFENSE

SME is informed and believes, and on that basis alleges, that Plaintiffs' claims and the claims of the putative class are barred by the applicable statute of limitations, including 17 U.S.C. § 507(b).

## SEVENTH DEFENSE

Plaintiffs' claims and the claims of the putative class against SME are barred, in whole or in part, by the terms of the agreements at issue.

## EIGHTH DEFENSE

Plaintiffs' damages and the damages of the putative class, if any, were not caused, in whole or in part, by the alleged conduct of SME.

## NINTH DEFENSE

Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, because the exploitations of the sound recordings at issue were authorized.

## TENTH DEFENSE

Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, by the doctrines of acquiescence, ratification, license, and/or consent.

## ELEVENTH DEFENSE

Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, to the extent SME is a co-owner of the copyrights in the sound recordings at issue.

## TWELFTH DEFENSE

This action is barred, in whole or in part, because the Complaint fails to state a claim upon which any type of injunctive, temporary, or preliminary relief can be properly granted against SME.

## THIRTEENTH DEFENSE

Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, to the extent that their purported notices of termination are invalid and/or have not been properly recorded and/or served, including because they are untimely, and they fail to include information required by, or satisfy the other requirements of, 17 U.S.C. § 203 and/or 37 C.F.R. § 201.10.

## FOURTEENTH DEFENSE

Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, to the extent that they seek to terminate SME's copyrights in sound recordings for which no notice was sent.

## FIFTEENTH DEFENSE

Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, to the extent that their purported notices of termination seek to terminate so-called "gap grants," such that 17 U.S.C. § 203 does not apply.

## SIXTEENTH DEFENSE

This action is barred, in whole or in part, to the extent the requirements of 17 U.S.C. § 411 have not been satisfied.

## SEVENTEENTH DEFENSE

Plaintiffs' claims and the claims of the putative class are barred, in whole or in part, by the doctrines of unclean hands and/or copyright misuse.

## EIGHTEENTH DEFENSE

Plaintiffs' damages and the damages of the class are barred, in whole or in part, because, to the extent any reproduction, sale, distribution, or other use of the sound recordings at issue in this action is found to have been an infringement of the copyrights in said sound recording, SME was not aware and had no reason to believe that its acts constitute an infringement of those copyrights.

## NINETEENTH DEFENSE

Plaintiffs' damages and the damages of the class are barred, in whole or in part, because the damages, if any, were caused by independent, intervening, and/or superseding events beyond the control of SME and unrelated to SME's conduct.  Any loss, injury, or damage claimed by Plaintiffs was proximately caused by Plaintiffs' own acts or omissions, forces and events unrelated to SME's alleged conduct, and/or the acts or omissions of persons or entities other than SME, over which SME has no control.

## TWENTIETH DEFENSE

Plaintiffs' claims and/or the claims of any members of the putative class for attorneys' fees are barred because they lack any basis in law or contract and attorneys' fees are not warranted under 17 U.S.C. § 505.

### TWENTY-FIRST DEFENSE

To the extent Plaintiffs have not complied with 17 U.S.C § 412, they are not entitled to recover statutory damages or attorneys' fees in connection with any of the claims for relief alleged in the Complaint.

### TWENTY-SECOND DEFENSE

Plaintiffs may not maintain this lawsuit as a class action because of inadequacy of class counsel (including Evan S. Cohen and Cohen Music Law), the purported claims of the putative class representative are not sufficiently typical of those of the purported class members, common issues of fact and law do not predominate over individual issues and liability and damages cannot be proven on a class-wide basis, the putative class representative will not adequately represent the purported class, the putative class is not ascertainable, the proposed class action would not be manageable, and a class action is not a superior method for adjudicating the purported claims set forth in the Complaint.

### TWENTY-THIRD DEFENSE

Any attempt to require SME to identify, locate or notify absent persons on whose behalf this action is allegedly prosecuted would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### TWENTY-FOURTH DEFENSE

As a matter of constitutional right and substantive due process, SME would be entitled to contest by jury trial its liability to any particular individual on whose behalf this action is purportedly brought.  Trying this case as a class action would violate the United States Constitution.

## **TWENTY-FIFTH DEFENSE**

Plaintiffs' claims are barred because they have failed to name indispensable parties without which relief and/or a full adjudication of Plaintiffs' rights and SME's defenses cannot be fully adjudicated.

## **TWENTY-SIXTH DEFENSE**

SME has insufficient knowledge or information upon which to form a belief as to whether it may have additional yet unstated defenses.  SME hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserves the right to amend this Answer and assert all such defenses.

## **TWENTY-SEVENTH DEFENSE**

SME specifically reserves all affirmative or other defenses that it may have against the putative class.  The Answer does not enumerate all the defenses applicable to putative class members.  It is not necessary at this time for SME to delineate defenses against the putative class because no class has been certified, and the putative class members are not parties to this litigation.

## COUNTERCLAIMS

Counterclaim Plaintiff SME Music Entertainment, by and through its attorneys Gibson, Dunn & Crutcher LLP, for its counterclaims against Counterclaim Defendants John Lyon ("Lyon") and Paul Collins ("Collins"), alleges as follows:

## I.   INTRODUCTION

1.      SME brings these counterclaims to redress the willful infringement of its copyrighted sound recordings and photographic materials by Counterclaim Defendants John Lyon and Paul Collins.  While Lyon and Collins have sued SME for copyright infringement based on ineffective termination notices, the reality is that *Lyon* and *Collins* are the ones who are knowingly and willfully infringing SME's copyrights.

2.      In the underlying action, Lyon and Collins seek to validate purported terminations of alleged grants of copyright in various works based on ineffective termination notices.  At the same time, and without waiting for the Court to resolve the termination claims, Lyon and Collins have been copying, distributing, and/or digitally transmitting multiple sound recordings, in flagrant infringement of SME's copyrights.  Further, Lyon and Collins have been infringing the copyrights in certain sound recordings and album artwork owned by SME that are not at issue in the underlying termination claims.  For these works, there is no dispute that SME is the copyright owner.

3.      As evidence of Lyon's and Collins's willful copyright infringement, Lyon and Collins have been copying and distributing albums and individual sound recordings, digitally transmitting sound recordings and publicly displaying artwork despite receiving notice from SME that the termination notices purporting to cover those works are deficient, and that SME still retains ownership.  As further evidence of Lyon's and Collins's willfulness, in some cases they have also affirmatively *removed* any reference to SME's (or its predecessor's) copyrights.

4.       Lyon's and Collins's infringing conduct is not limited to their own direct infringement.  Upon information and belief, Lyon and Collins have also intentionally induced, encouraged, authorized, and/or exercised control over *others* to distribute and display SME's copyrighted sound recordings and artwork on their websites.  This secondary infringement includes authorizing their attorney, Evan Cohen, who now seeks to represent a putative class of artists in the underlying action, to distribute and display SME's copyrighted artwork on a website owned and maintained by Evan Cohen.  Upon information and belief, Lyon has also contributed to and/or exercised control over an online store hosted on a third-party platform that is directly linked from Lyon's website and displays SME's copyrighted artwork, through which Lyon encourages visitors to purchase SME's copyrighted albums.

5.       Lyon's and Collins's conduct constitutes willful copyright infringement.  As a result of Lyon's and Collins's unlawful acts, SME is entitled to injunctive relief barring further exploitation of SME's copyrighted sound recordings and artwork in any form or combination; statutory damages of up to $150,000 per work infringed or, at SME's election, to actual damages and Lyon's and Collins's profits derived from their unlawful actions, as well as SME's attorneys' fees and costs in bringing this action; and impoundment, destruction, or other reasonable disposition of infringing copies.

## II.       PARTIES

6.       SME is a Delaware general partnership headquartered in New York, New York.  It is engaged in producing, marketing, distributing, selling, licensing, and otherwise exploiting recorded music.  It is a successor-in-interest to CBS, Inc. ("CBS") and owns copyrights in sound recordings with performances by Lyon and Collins, compilations of such recordings, and artwork included in or used with such compilations.  Attached hereto as **Exhibit A** is a non-exhaustive, exemplary list of SME's copyrighted works that Lyon and Collins have infringed, directly or

secondarily, by the acts complained of herein.  SME has received Certificates of Copyright

Registration from the Register of Copyrights for these copyrighted works.

      7.      Lyon is a Plaintiff in the underlying action, is known professionally as Southside

Johnny, and was a member of the band Southside Johnny and the Asbury Jukes.

      8.      Collins is a Plaintiff in the underlying action, is a musician, and was in the musical

group Paul Collins' Beat.

### III.     JURISDICTION

      9.      This Court has subject matter jurisdiction over the Counterclaims pursuant to 28

U.S.C. §§ 1331 and 1338.

      10.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because

Plaintiffs originally commenced this action in this Court and a substantial part of the events or

omissions giving rise to the claims occurred in this District.

### IV.     BACKGROUND

      11.     In the 1970s and 1980s, SME's predecessor, CBS, released albums of sound

recordings including performances by Lyon and Collins.  These albums were released pursuant to

contractual agreements with furnishing individuals and companies.  These third-party furnishers,

some of whom are now named as third-party defendants in this action, agreed to furnish Lyon's

and Collins's services for performing on sound recordings and albums.  Under these "furnishing

agreements," CBS was the author and copyright owner of the sound recordings and had the

exclusive right to copyright, exploit, and distribute the sound recordings and albums in perpetuity.

      12.     When the sound recordings and albums were created, CBS also arranged for the

creation of artwork to appear on the albums, including photographs to appear on the albums.

These photographs were commissioned by CBS from third-party photographers, and CBS is the

author of these photographs for purposes of copyright law.  The photographs reflect no authorship by Lyon or Collins whatsoever.

13.     CBS obtained copyright registrations for those albums, sound recordings, photographs, and other artwork.  As CBS's successor, SME now owns the copyrights to the works at issue.

     **A.**     **John Lyon Is Infringing SME's Copyrights in Various Albums and Photographic Materials.**

14.     In the 1970s and 1980s, SME's predecessor obtained copyright registrations for albums of sound recordings with performances by Lyon and other members of Southside Johnny and the Asbury Jukes and the artwork on the albums.  SME is now the copyright owner of these works.

15.     As described in further detail below, Lyon has violated SME's exclusive reproduction, public display, and distribution rights by using, without authorization, SME's copyrighted artwork on his and third-party websites and as album covers for CDs sold on his website.  Lyon has also violated SME's exclusive reproduction and public display rights by intentionally inducing, encouraging, and authorizing his counsel, Evan Cohen, to use SME's artwork on Cohen's website to promote Cohen's services.  Finally, Lyon has violated SME's exclusive reproduction and distribution rights by selling CDs containing SME's copyrighted sound recordings through his website.

     **1.**     **Lyon Is Infringing SME's Copyright in the "This Time It's For Real" Record Jacket.**

16.     On April 11, 1977, SME's predecessor, CBS, received from the Register of Copyrights a certificate of registration, Registration Number KK247946, covering the record jacket for the album "This Time It's For Real."  SME now owns the copyright in that work, which is depicted below:



17.     Lyon is infringing SME's copyright by reproducing, distributing, and displaying the album artwork for "This Time It's For Real" online, including on Lyon's website (https://www.southsidejohnny.com/music.html):



18.     Upon information and belief, Lyon has also intentionally induced, encouraged, and/or authorized his lawyer in the underlying action, Evan Cohen, to reproduce and display the album artwork for "This Time It's For Real" on a website controlled by Evan Cohen (http://copyrightterminationexperts.com/client-list/?_gallery=gg-6-85; http://copyrightterminationexperts.com/wp-content/uploads/2017/04/southside-johnny.jpg?gid=6). The website lists John Lyon as a client and, upon information and belief, Lyon directed and

instructed Evan Cohen to include the photographic album artwork for "This Time It's For Real" on Evan Cohen's website:



19.     Lyon's infringing conduct was, and continues to be, willful and with full knowledge of SME's rights in the album artwork for "This Time It's For Real."  Lyon's willfulness is established by, among other things, Lyon's direction and instruction to his counsel, Evan Cohen, to post the photographic album artwork for "This Time It's For Real" on Evan Cohen's website.

> **2.     Lyon Is Infringing SME's Copyright in the "I Don't Want to Go Home" Record Jacket.**

20.     On June 4, 1978, SME's predecessor, CBS, received from the Register of Copyrights a certificate of registration, Registration Number KK244371, which covered the record jacket for the album "I Don't Want to Go Home."  SME now owns the copyright in that work, which is depicted below:



21.     Lyon is infringing SME's copyright by reproducing, distributing, and displaying the album artwork for "I Don't Want to Go Home" online, including on Lyon's website (https://www.southsidejohnny.com/music.html):



22.     Upon information and belief, until in or around July 2020, Lyon distributed and displayed the album artwork for "I Don't Want to Go Home" on an online music store through which Lyon's website directs visitors to purchase music (http://popmusicmerch.com/asburyjukes/index.php?mainpage=productinfo&cPath=1&products_id=3).  CDs purchased through the link on Lyon's website also infringed upon SME's copyright by

featuring the photographic material for "I Don't Want to Go Home" on the cover, with all references to SME eliminated.

23.     To the extent that any third party may be involved in operation of the online store, upon information and belief, Lyon has caused, contributed to, or participated in the third party's infringement of SME's copyrights, and/or exercised control over the third-party operator of the online store for his personal financial benefit.  Lyon's website directly links to the online store. and the store's home page of describes itself as "the official merchandise site for Southside Johnny and the Asbury Jukes."  The footer on the online store's webpage states "Copyright © 2020 Asbury Jukes Merchandise."  Upon information and belief, Lyon receives a direct financial benefit from sales of CDs of the "I Don't Want to Go Home" album through the online store.

24.     Lyon's infringing conduct was, and continues to be, willful and with full knowledge of SME's rights in the album artwork for "I Don't Want to Go Home."  Lyon's willfulness is established by, among other things, Lyon's deliberate removal of any references to SME or its predecessor from his website, the music purchasing website, or the CDs purchased through Lyon's website.

**3.     Lyon Is Infringing SME's Copyrights in the "I Don't Want to Go Home" Album.**

25.     On May 18, 1976, SME's predecessor, CBS, received from the Register of Copyrights a certificate of registration, Registration Number N34186, which covered the sound recordings on the single "I Don't Want to Go Home" from the album of that same name.  On June 4, 1976, SME's predecessor, CBS, received from the Register of Copyrights a certificate of registration, Registration Number N34609, which covered the album "I Don't Want to Go Home" and the remaining sound recordings on it.

26.     The original copyrights in the album and the recordings on it were automatically renewed by operation of Section 304(a) of the Copyright Act.  On December 8, 2004, SME received from the Register of Copyrights a renewal registration for the album, Registration Number RE0000905463.  SME owns the copyright in the album and the sound recordings on it.

27.     Lyon has not served a termination notice on SME with respect to the album "I Don't Want to Go Home," and any alleged grants of rights to CBS with respect to the album "I Don't Want To Go Home" are not subject to termination under Section 203 of the Copyright Act, because those grants would have been executed prior to the release of that album in 1976.  Thus, the album "I Don't Want to Go Home" is not a subject of the underlying action.

28.     Lyon infringed SME's exclusive rights to reproduce and distribute the album "I Don't Want to Go Home" by manufacturing counterfeit CDs of the album and selling those CDs through a link on his website.  Those CDs embody a complete copy of SME's copyrighted album. Each of the sound recordings contained on "I Don't Want to Go Home" sold through Lyon's website is an unauthorized copy of SME's copyrighted sound recording.  Moreover, the "I Don't Want to Go Home" album sold on the online stored linked to by Lyon's website contains metadata that confirms that the tracks are sound recordings owned by SME.[2]

29.     To the extent that any third party may be involved in operation of the online store, upon information and belief, Lyon has caused, contributed to, or participated in the third party's infringement of SME's copyrights, and/or exercised control over the third-party operator of the online store for his personal financial benefit.  The online store is directly linked from Lyon's website, and the store's home page describes itself as "the official merchandise site for Southside Johnny and the Asbury Jukes."  The footer on the online store's webpage states "Copyright ©

---

[2] As of the filing of these Counterclaims, "I Don't Want to Go Home" was not available for purchase on Lyon's website, but on information and belief has been sold through the website until as recently as August 2020.

2020 Asbury Jukes Merchandise." Upon information and belief, Lyon receives a direct financial

benefit from sales of CDs of the "I Don't Want to Go Home" album through the online store.

30.     Lyon's infringing conduct was willful and with full knowledge of SME's rights in

the album "I Don't Want to Go Home" and the sound recordings contained therein. Lyon's

willfulness is established by, among other things: (1) Lyon's use of sound recordings that still

retain metadata confirming that the tracks are tracks prepared by SME, and (2) his deliberate

removal of any references to SME or its predecessor from the physical copies of the album sold on

an online music store linked from Lyon's website.

### 4.     Lyon Is Infringing SME's Copyright in the "Hearts of Stone" Photographic Material.

31.     On December 11, 1978, SME's predecessor, CBS, received from the Register of

Copyrights a certificate of registration, Registration Number SR0000004769, which covered the

album "Hearts of Stone," including photographic matter and sound recordings. SME now owns

the copyright in that photographic matter, which is depicted below:



32.     While Lyon asserts in the underlying action that he has the terminated an alleged

grant of copyright in the "Hearts of Stone" *album*, the termination notice served on SME is

expressly limited to "sound recordings." That is, the notice did not cover the photographic

material on the album cover.  Further, if anyone other than CBS is the author of the photographic

matter used on the "Hearts of Stone" album, that author is not Lyon.  It follows that Lyon could

not have made a grant of rights with respect to the photographic matter that is terminable under

Section 203.  Thus, regardless of whether Lyon has successfully terminated his alleged grant of

copyright in the "Hearts of Stone" album (which he has not), SME is the sole owner of the

copyright in the photographic material from the "Hearts of Stone" album.

      33.     Lyon is infringing SME's copyright by reproducing, distributing, and displaying

the album artwork for "Hearts of Stone" online, including on Lyon's website

(https://www.southsidejohnny.com/music.html):



34. Lyon is also infringing SME's copyright by reproducing, distributing, and displaying the

     album artwork for "Hearts of Stone" on an online music store through which Lyon's website

     directs visitors to purchase music

     (http://popmusicmerch.com/asburyjukes/index.php?main_page=product_info&cPath=1&prod

     ucts_id=24):



35.     CDs purchased through the link on Lyon's website also feature the album artwork for "Hearts of Stone" on the cover, with all references to SME eliminated.  This, too, infringes SME's copyright in the "Hearts of Stone" album artwork.

36.     To the extent that any third party may be involved in operation of the online store, upon information and belief, Lyon has caused, contributed to, or participated in the third party's infringement of SME's copyrights, and/or exercised control over the third-party operator of the online store for his personal financial benefit.  The online store is directly linked from Lyon's website, and the store's home page describes itself as "the official merchandise site for Southside Johnny and the Asbury Jukes."  The footer on the online store's webpage states "Copyright © 2020 Asbury Jukes Merchandise."  Upon information and belief, Lyon receives a direct financial benefit from sales of CDs of the "Hearts of Stone" album through the online store.

37.     Lyon's infringing conduct was, and continues to be, willful and with full knowledge of SME's rights in the album artwork for "Hearts of Stone."  Lyon's willfulness is established by, among other things, the limited scope of Lyon's termination notice for the "Hearts

26

of Stone" album and Lyon's deliberate removal of any references to SME or its predecessor from his website, the music purchasing website, or the CDs purchased through Lyon's website.

>        5.        **Lyon Is Infringing SME's Copyrights in the "Hearts of Stone" Album.**

38.        The certificate of registration, Registration Number SR0000004769, that SME's predecessor, CBS, received from the Register of Copyrights also covers the sound recordings contained on the "Hearts of Stone" album.

39.        To the extent the Court determines that Lyon has not validly terminated the alleged grant of copyright in the "Hearts of Stone" album, SME owns the copyrights in the sound recordings on the album.  Moreover, regardless of whether the Court determines that Lyon's termination notice was valid, Lyon cannot dispute that SME owned the copyrights in the sound recordings on the "Hearts of Stone" album before the effective date of termination listed in the notice (June 2, 2017).

40.        Lyon has infringed SME's exclusive rights to reproduce and distribute the album "Hearts of Stone" by manufacturing counterfeit CDs of the album and selling those CDs through a link on his website.  Each of the sound recordings contained on the album "Hearts of Stone" purchased through Lyon's website is an unauthorized copy of SME's copyrighted sound recordings.

41.        To the extent that any third party may be involved in operation of the online store, upon information and belief, Lyon has caused, contributed to, or participated in the third party's infringement of SME's copyrights, and/or exercised control over the third-party operator of the online store for his personal financial benefit.  The online store is directly linked from Lyon's website, and the store's home page describes itself as "the official merchandise site for Southside Johnny and the Asbury Jukes."  The footer on the online store's webpage states "Copyright ©

2020 Asbury Jukes Merchandise."  Upon information and belief, Lyon receives a direct financial benefit from sales of CDs of the "Hearts of Stone" album through the online store.

42.     Lyon's infringing conduct was, and continues to be, willful and with full knowledge of SME's copyrights in the "Hearts of Stone" album and the sound recordings contained therein.  Lyon's willfulness is established by, among other things, Lyon's own deficient termination notice and SME's correspondence putting Lyon on notice that SME continues to own the copyright in the work "Hearts of Stone."  Despite knowing that SME asserts that it maintains ownership of the copyright, and without waiting for the Court to resolve the termination claims, Lyon is infringing the work "Hearts of Stone."

43.     Upon information and belief, Lyon's willfulness is further established by the manufacturing of, and sale of, the "Hearts of Stone" album through an online music store linked from Lyon's website before June 2, 2017, the effective date of termination listed in the notice of termination.  Even if Lyon believed his notice of termination for the "Hearts of Stone" album was valid (it is not), he would have known that sales of that album before June 2, 2017 infringed SME's copyrights.

### 6.     Lyon Is Infringing SME's Copyright in the "Havin' A Party With Southside Johnny" Photographic Material.

44.     On August 13, 1980, SME's predecessor, CBS, received from the Register of Copyrights a certificate of registration, Registration Number SR0000019862, which covered the album "Havin' A Party With Southside Johnny," including the photographic matter, compilation and some new sounds.  SME now owns the copyright in that photographic matter, which is depicted below:



45.     While Lyon asserts in the underlying action that he has terminated an alleged grant of copyright in the "Havin' A Party With Southside Johnny" *album*, the termination notice served on SME is expressly limited to "sound recordings."  That is, the notice did not cover the photographic material on the album cover.  Further, if anyone other than CBS is the author of the photographic matter used on the "Havin' A Party With Southside Johnny" album, that author is not Lyon.  It follows that Lyon could not have made a grant of rights with respect to the photographic matter that is terminable under Section 203.  Thus, regardless of whether Lyon has terminated the alleged grant of copyright in the "Havin' A Party With Southside Johnny" album (which he has not), SME is the sole owner of the copyright in the photographic material from the "Havin' A Party With Southside Johnny" album.

46.     Lyon is infringing SME's copyright by reproducing, distributing, and displaying the album artwork for "Havin' A Party With Southside Johnny" online, including on Lyon's website (https://www.southsidejohnny.com/music.html):



Havin' A Party With South Side Johnny
(1990)

47.     Lyon's infringing conduct was, and continues to be, willful and with full
knowledge of SME's copyright in the album artwork for "Havin' A Party With Southside
Johnny."  On information and belief, Lyon has reproduced, distributed, and displayed the album
artwork with full knowledge that he is not the author of the artwork.  Lyon's willfulness is further
established by, among other things, his knowledge that he is not the author of the artwork, and his
deliberate alteration of the publication date on his website (1990 instead of 1980), in an attempt to
avoid any suggestion that the copyrighted album artwork was owned by CBS (now SME).

       **7.     Lyon Is Infringing SME's Copyright in "The Best of Southside Johnny
          and the Asbury Jukes" Compilation of Photographic Material.**

48.     On October 6, 1992, SME received from the Register of Copyrights a certificate of
registration, Registration Number SR0000168249, which covered the album "The Best of
Southside Johnny and the Asbury Jukes," including the compilation of sound recordings and
certain photographic matter.  The artwork for that album ("Best of Southside Johnny and the
Asbury Jukes") is depicted below:



49.    Lyon is infringing SME's copyright by reproducing, distributing, and displaying

the album artwork for "Best of Southside Johnny and the Asbury Jukes" online, including on

Lyon's website (https://www.southsidejohnny.com/music.html):



50.    Lyon is also infringing SME's copyright by reproducing, distributing, and

displaying the album artwork for "Best of Southside Johnny and the Asbury Jukes" on an online

music store through which Lyon's website directs visitors to purchase music

(http://popmusicmerch.com/asburyjukes/index.php?main_page=product_info&cPath=1&products

_id=1):



51.     CDs purchased through the link on Lyon's website also feature the album artwork for "Best of Southside Johnny and the Asbury Jukes" on the cover, with all references to SME eliminated.

52.     To the extent that any third party may be involved in operation of the online store, upon information and belief, Lyon has caused, contributed to, or participated in the third party's infringement of SME's copyrights, and/or exercised control over the third-party operator of the online store for his personal financial benefit.  The online store is directly linked from Lyon's website, and the store's home page describes itself as "the official merchandise site for Southside Johnny and the Asbury Jukes."  The footer on the online store's webpage states "Copyright © 2020 Asbury Jukes Merchandise."  Upon information and belief, Lyon receives a direct financial

benefit from sales of CDs of the "Best of Southside Johnny and the Asbury Jukes" album through the online store.

53.     Lyon's infringing conduct was, and continues to be, willful and with full knowledge of SME's rights in the album artwork for "Best of Southside Johnny and the Asbury Jukes." Lyon's willfulness is established by, among other things, the online music store, accessible through Lyon's website, which admits that "Sony . . . released . . . this 1992 collection," despite knowing that SME possesses the copyright in the album artwork.

> **8.     Lyon Is Infringing SME's Copyrights in Sound Recordings Appearing on "The Best of Southside Johnny and the Asbury Jukes."**

54.     The album "The Best of Southside Johnny and the Asbury Jukes," the subject of Registration Number SR0000168249, has sound recording tracks that were originally released on other albums, including:

- "I Don't Want To Go Home," an album released by CBS in 1976 and the subject of Registration Number N34186 and Registration N34609;

- "This Time It's for Real," an album released by CBS in 1977 and the subject of Registration Number N41984;

- "Hearts of Stone" an album released by CBS in 1978 and the subject of Registration Number SR0000004769; and

- "Having a Party with Southside Johnny," an album released by CBS in 1980 and the subject of Registration Number SR0000019862.

55.     Other sound recordings on "The Best of Southside Johnny and the Asbury Jukes" were not previously commercially released and are covered by SR0000168249, including "Got to Get You Off of My Mind (live)", "Snatchin' It Back (live)", "Sweeter Than Honey (live)", and "You Mean So Much To Me (live)". SME owns the copyright in all of those recordings.

56.     Lyon has served termination notices with respect to the sound recordings on the albums "Hearts of Stone" and "Having a Party with Southside Johnny," which are subjects of the underlying action.  To the extent the Court determines that Lyon has not validly terminated the alleged grants with respect to those albums, SME still owns the copyrights in the tracks on those albums.  Moreover, regardless of whether the Court determines that Lyon's termination notices were valid, Lyon cannot dispute that SME owned the copyrights in the sound recordings on the "Hearts of Stone" and "Having a Party with Southside Johnny" albums before the effective date of termination listed in the notices (June 2, 2017).

57.     Lyon has not served a termination notice on SME with respect to the album "The Best of Southside Johnny and the Asbury Jukes" (including the four recordings identified in Paragraph 55 above), and any alleged grants of rights to CBS with respect to the albums "I Don't Want To Go Home" and "This Time It's for Real" are not subject to termination under Section 203 of the Copyright Act, because those grants would have been executed prior to the release of those albums in 1976 and 1977, respectively.  Accordingly, SME owns the copyrights in the sound recordings from the album "The Best of Southside Johnny and the Asbury Jukes" that were not originally released on the albums "Hearts of Stone" and "Having a Party with Southside Johnny," even if the Court determines that Lyon has validly terminated alleged grants with respect to the latter two albums.

58.     Lyon is infringing SME's exclusive rights to reproduce and distribute the album "The Best of Southside Johnny and Asbury Jukes" by manufacturing counterfeit CDs of the album and selling those CDs on an online music store through which Lyon's website directs visitors to purchase music (http://popmusicmerch.com/asburyjukes/index.php?main_page=index&cPath=1):



59.     To the extent that any third party may be involved in operation of the online store,

upon information and belief, Lyon has caused, contributed to, or participated in the third party's

infringement of SME's copyrights, and/or exercised control over the third-party operator of the

online store for his personal financial benefit.  The online store is directly linked from Lyon's

website, and the store's home page describes itself as "the official merchandise site for Southside

Johnny and the Asbury Jukes."  The footer on the online store's webpage states "Copyright ©

2020 Asbury Jukes Merchandise."  Upon information and belief, Lyon receives a direct financial

benefit from sales of CDs of the "Best of Southside Johnny and the Asbury Jukes" album through

the online store.

60.     Lyon's infringing conduct was, and continues to be, willful and with full

knowledge of SME's copyrights in the album "The Best of Southside Johnny and the Asbury

Jukes" and the sound recordings contained therein.  Lyon's willfulness is established by, among

other things:  (1) Lyon's knowledge that he did not send termination notices covering the album "The Best of Southside Johnny and the Asbury Jukes" and many of the sound recordings on it, and (2) his deliberate removal of any references to SME or its predecessor from the physical copies of the album sold through the online music store linked from Lyon's website.

61.     Upon information and belief, Lyon's willfulness is further established by sales of the "The Best of Southside Johnny and the Asbury Jukes" albums through an online music store linked from Lyon's website before June 2, 2017, the effective date of termination listed in the notices of termination for the albums "Hearts of Stone" and "Having a Party with Southside Johnny."  Even if Lyon believed the termination notices for the "Hearts of Stone" and "Having a Party with Southside Johnny" albums were valid (they are not), he would have known that sales of the "The Best of Southside Johnny and the Asbury Jukes" album before June 2, 2017 infringed SME's copyrights in the sound recordings that were originally released on the "Hearts of Stone" and "Having a Party with Southside Johnny" albums, as well as the sound recordings that did not appear on those two albums.

**B.     Paul Collins Is Infringing SME's Copyright in Various Photographic Materials and Sound Recordings.**

62.     In the 1970s and 1980s, SME's predecessor obtained copyright registrations for albums of sound recordings including performances by Collins and the photographic material contained on the albums.  SME now is now the copyright owner of these works.

63.     As described in further detail below, Collins has violated SME's exclusive reproduction, distribution, and public display rights by using, without authorization, SME's photographic material on his and third-party websites.  Collins has also violated SME's exclusive reproduction and public display rights by intentionally inducing, encouraging, and authorizing his counsel, Evan Cohen, to use SME's photographic materials on Cohen's website to promote

Cohen's services.  Collins has also violated SME's exclusive reproduction and public performance rights by streaming certain copyrighted sound recordings owned by SME on various websites that Collins maintains.

> **1.      Collins Is Infringing SME's Copyright in the "The Beat" Photographic Material.**

64.      On November 5, 1979, SME's predecessor, CBS, received from the Register of Copyrights a certificate of registration, Registration Number SR0000013516, which covered the album "The Beat," including the photographic matter.  SME now owns the copyright in that photographic matter, which is depicted below:



65.      While Collins asserts in the underlying action that he has terminated an alleged grant of copyright in the "The Beat" *album*, the termination notice served on SME is expressly limited to "sound recordings."  That is, the notice did not cover the photographic material on the album cover.  Further, if anyone other than CBS is the author of the photographic matter used on the "The Beat" album, that author is not Collins.  It follows that Collins could not have made a grant of rights with respect to the photographic matter that is terminable under Section 203.  Thus, regardless of whether Collins has successfully terminated the alleged grant of copyright in the "The Beat" album (which he has not), SME is the sole owner of the copyright in the photographic material from the "The Beat" album.

66.     Collins is infringing SME's copyright by reproducing, distributing, and displaying the album artwork for "The Beat" online, including in the following locations:

a)  On Collins's website (https://www.thepaulcollinsbeat.com/music/albums.html):



b)  On several websites where Collins advertises his music (https://www.reverbnation.com/page_object/page_object_photos/artist_682118?photo=1953352 and https://paulcollinsbeat.bandcamp.com/album/the-beat-live-1979-2?fbclid=IwAR2GXNZRVO5Ke6pUvFhCoIzoWoZx25IJg6R63JYcXBcsF_T6sFV1vFM2ssE):

 

c)  On Instagram, including, upon information and belief, providing it to promoters for advertising (https://www.instagram.com/p/BuVbOX8BpY3/;

https://www.instagram.com/p/BstUkKihm-_/; https://www.instagram.com/p/
BDYr2cqNzzV/; https://www.instagram.com/p/BAPjeAPNz1E/;
https://www.instagram.com/p/4SV60DOWYk/):



d) On Twitter, including, upon information and belief, providing it to promoters for

   advertising (https://twitter.com/paulvcollins/status/997102544664055810;

   https://twitter.com/paulvcollins/status/721362776984162305/photo/1;

   https://pbs.twimg.com/media/CgLLnszVAAAzvqS?format=jpg&name=900x900):



e)  On MySpace (https://myspace.com/paulcollinsbeat):



f)  On Facebook, including, upon information and belief, providing it to promoters for advertising (https://www.facebook.com/46392812761/photos/a.437557872761/101567 39780517762/?type=1&theater; https://www.facebook.com/events/243943946538159/; https://www.facebook.com/events/494624514781153/; https://www.facebook.com /events/2112338839079171/; https://www.facebook.com/46392812761/photos/ a.10156562480202762/10156562480472762/?type=3&theater):



67.     To the extent that any third party may be involved in the operation of the above websites, upon information and belief, Collins has caused, contributed to, or participated in the third party's infringement of SME's copyrights, and/or exercised control over any third-party websites above for his personal financial benefit.

68.     Upon information and belief, Collins has also intentionally induced, encouraged, and/or authorized his lawyer in the underlying action, Evan Cohen, to display the album artwork for "The Beat" on a website controlled by Evan Cohen (http://copyrightterminationexperts.com/client-list/?_gallery=gg-6-128).  The website lists Paul Collins as a client and, upon information and belief, Collins directed and instructed Evan Cohen to include the album artwork for "The Beat" on Evan Cohen's website:



69.    Collins's infringing conduct was, and continues to be, willful and with full knowledge of SME's rights in the album artwork for "The Beat."  Collins's willfulness is established by, among other things, Collins's website, which expressly states "The Beat – CBS 1979."

**2.    Collins Is Infringing SME's Copyright in Sound Recordings on "The Beat" Album.**

70.    The certificate of registration, Registration Number SR0000013516, that SME's predecessor, CBS, received from the Register of Copyrights also covers the sound recordings contained on the "The Beat" album.  SME now owns the copyright in those works.

71.    To the extent the Court determines that Collins has not validly terminated the alleged grant of copyright in the "The Beat" album, SME possesses the exclusive copyright in the sound recordings contained on the "The Beat" album.

72.    Collins has infringed SME's exclusive rights to reproduce, publicly perform, and/or distribute the sound recordings on the album "The Beat," including by streaming substantial excerpts of all album tracks at the following site, which, on information and belief, was available as recently as September 2020:  https://www.thepaulcollinsbeat.com/music/albums.html.  Collins

continues to infringe SME's exclusive rights to reproduce, publicly perform, and/or distribute

sound recordings from "The Beat," including but not limited to the song "Rock N Roll Girl" by

digitally streaming them on the Internet, including at the following locations:

https://www.facebook.com/Paul-Collins-Beat-46392812761/app/2405167945/ and

https://www.reverbnation.com/artist/downloads/682118.

73.     To the extent that any third party may be involved in the operation of the above

websites, upon information and belief, Collins has caused, contributed to, or participated in the

third party's infringement of SME's copyrights, and/or exercised control over third-party websites

for his personal financial benefit.

74.     Collins's infringing conduct was, and continues to be, willful and with full

knowledge of SME's exclusive rights in the sound recordings on "The Beat" album.  Collins's

willfulness is established by, among other things, Collins's own deficient termination notice and

SME's correspondence putting Collins on notice that SME continues to own the copyright in the

album "The Beat" and the sound recordings contained on the album.  Despite knowing that SME

asserts that it maintains ownership of the copyright, and without waiting for the Court to resolve

the termination claims, Collins is infringing the copyrights in the sound recordings on "The Beat."

**3.     Collins Is Infringing SME's Copyright in the "The Kids Are The Same" Photographic Material.**

75.     On March 4, 1982, SME's predecessor, CBS, received from the Register of

Copyrights a certificate of registration, Registration Number SR0000033181, which covered the

album "The Kids Are The Same," including photographic matter and sound recordings.  SME now

owns the copyright in the photographic matter, which is depicted below:



76.     While Collins asserts in the underlying action that he has terminated an alleged

grant of copyright in the "The Kids Are The Same" *album*, the termination notice served on SME

is expressly limited to "sound recordings."  That is, the notice did not cover the photographic

material on the album cover.  Further, if anyone other than CBS is the author of the photographic

matter used on the "The Kids Are The Same" album, that author is not Collins.  It follows that

Collins could not have made a grant of rights with respect to the photographic matter that is

terminable under Section 203.  Thus, regardless of whether Collins has successfully terminated the

alleged grant of copyright in the "The Kids Are The Same" album (which he has not), SME is the

sole owner of the copyright in the photographic material from the "The Kids Are The Same"

album.

77.     Collins is infringing SME's copyright by reproducing, distributing, and displaying

the album artwork for "The Kids Are The Same" online, including on Collins's website

(https://www.thepaulcollinsbeat.com/music/albums.html):



78.      Collins's infringing conduct was, and continues to be, willful and with full

knowledge of SME's rights in the album artwork for "The Kids Are The Same."  Collins's

willfulness is established by, among other things, Collins's website, which expressly states "The

Kids Are The Same – CBS 1981."

> **4.      Collins Is Infringing SME's Copyright in Sound Recordings on "The
> Kids Are The Same" Album.**

79.      The certificate of registration, Registration Number SR0000033181, that SME's

predecessor, CBS, received from the Register of Copyrights also covers the sound recordings

contained on the "The Kids Are the Same" album.  SME now owns the copyright in those works.

80.      To the extent the Court determines that Collins has not validly terminated the

alleged grant of copyright in the "The Kids Are The Same" album, SME possesses the exclusive

copyright in the sound recordings contained on the "The Kids Are The Same" album.

81.      Collins has infringed SME's exclusive rights to reproduce, publicly perform, and/or

distribute the sound recordings on the album "The Kids Are The Same" by streaming substantial

excerpts of all album tracks at the following site, which, on information and belief, was available

as recently as September 2020:  https://www.thepaulcollinsbeat.com/music/albums.html.

82.     To the extent that any third party may be involved in the operation of the above website, upon information and belief, Collins has caused, contributed to, or participated in the third party's infringement of SME's copyrights.

83.     Collins's infringing conduct was willful and with full knowledge of SME's exclusive rights in the sound recordings on "The Kids Are The Same" album.  Collins's willfulness is established by, among other things, Collins's own deficient termination notice and SME's correspondence putting Collins on notice that SME continues to own the copyright in the album "The Kids Are The Same" and the sound recordings contained on the album.  Despite knowing that SME asserts that it maintains ownership of the copyright, and without waiting for the Court to resolve the termination claims, Collins has infringed the copyrights in the sound recordings on "The Kids Are The Same."

**FIRST COUNTERCLAIM**
**(For Copyright Infringement, 17 U.S.C. § 501 *et seq.*, by John Lyon)**

84.     SME repeats and realleges the allegations contained in Paragraphs 1 through 83 of these Counterclaims as if set forth fully herein.

85.     SME is the owner of all right, title, and interest in the copyrighted works identified in Paragraphs 14 through 61.  SME or its predecessor, CBS, Inc., registered these albums, photographic images, and sound recordings with the Copyright Office and obtained Certificates of Registration.  All of the sound recordings identified on such Certificates of Registration are individually commercialized by SME including, but not limited to, by way of downloading and streaming.

86.     Lyon has willfully infringed SME's copyrights by reproducing, distributing, and publicly displaying the copyrighted works, without authorization and without SME's permission and consent.

87.     Upon information and belief, Lyon has committed and continues to commit acts of contributory infringement by intentionally inducing, encouraging, and authorizing others to publicly distribute and display the photographic works, including his lawyer, Evan Cohen.

88.     Upon information and belief, Lyon has committed and continues to commit acts of direct infringement by reproducing, distributing, and publicly displaying SME's copyrighted works through an online store without SME's consent.  To the extent any third party may be involved in operation of the online store, upon information and belief, Lyon has caused, contributed to, and participated in the third party's infringement of SME's copyrights, and/or exercised control over the online store for his direct financial benefit.

89.     Lyon's acts of infringement are willful, intentional, and purposeful, in violation of SME's rights.

90.     Pursuant to 17 U.S.C. § 504(c), as a result of Lyon's willful infringement and contributory and vicarious infringement of SME's copyrights and its exclusive rights under the Copyright Act, SME is entitled to recover up to $150,000 in statutory damages for each work infringed.  Alternatively, at SME's election, pursuant to 17 U.S.C. § 504(b), SME shall be entitled to its actual damages and Lyon's profits from infringement, as will be proven at trial.

91.     SME is further entitled to an award of its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

92.     Lyon's conduct is causing and, unless enjoined by this Court, will continue to cause SME severe and irreparable harm that cannot be fully compensated or measured in terms of money, and for which SME does not have an adequate remedy at law.  SME is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of SME's copyrights and its exclusive rights under the Copyright Act by Lyon.  SME is also entitled under 17 U.S.C. § 503 to an order directing the impoundment, destruction, or other reasonable disposition of all

infringing phonorecords or copies of SME's copyrighted sound recordings and photographic

material.

**SECOND COUNTERCLAIM**
**(For Copyright Infringement, 17 U.S.C. § 501 *et seq.*, by Paul Collins)**

93.     SME repeats and realleges the allegations contained in Paragraphs 1 through 83 of

these Counterclaims as if set forth fully herein.

94.     SME is the owner of all right, title, and interest in the copyrighted works identified

in Paragraphs 62 through 83.  SME or its predecessor, CBS, Inc., registered these albums,

photographic images, and sound recordings with the Copyright Office and obtained Certificates of

Registration.  All of the sound recordings identified on such Certificates of Registration are

individually commercialized by SME including, but not limited to, by way of downloading and

streaming.

95.     Collins has willfully infringed SME's copyrights by reproducing, distributing,

publicly performing and publicly displaying the copyrighted works, without authorization and

without SME's permission and consent.

96.     Upon information and belief, Collins has committed and continues to commit acts

of secondary infringement by intentionally inducing, encouraging, and authorizing others,

including operators of third-party websites and his lawyer, Evan Cohen, to publicly distribute and

display SME's copyrighted sound recordings and album artwork.  And upon information and

belief, Collins has exercised control over third parties infringing SME's copyrights for his

personal financial benefit. Collins's acts of infringement are willful, intentional, and purposeful, in

violation of SME's rights.

97.     Pursuant to 17 U.S.C. § 504(c), as a result of Collins's willful infringement and

contributory infringement of SME's copyrights and its exclusive rights under the Copyright Act,

SME is entitled to recover up to $150,000 in statutory damages for each work infringed. Alternatively, at SME's election, pursuant to 17 U.S.C. § 504(b), SME shall be entitled to its actual damages and Collins's profits from infringement, as will be proven at trial.

98.    SME is further entitled to an award of its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

99.    Collins's conduct is causing and, unless enjoined by this Court, will continue to cause SME severe and irreparable harm that cannot be fully compensated or measured in terms of money, and for which SME does not have an adequate remedy at law.  SME is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of SME's copyrights and its exclusive rights under the Copyright Act by Collins.  SME is also entitled under 17 U.S.C. § 503 to an order directing the impoundment, destruction, or other reasonable disposition of all infringing phonorecords or copies of SME's copyrighted sound recordings and photographic material.

## JURY DEMAND

SME demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, SME respectfully requests the following relief:

1) A permanent injunction enjoining Lyon from directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of SME's copyrights or exclusive rights protected by the Copyright Act;

2) A permanent injunction enjoining Collins from directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating

in the infringement of any of SME's copyrights or exclusive rights protected by the

Copyright Act;

3)  An award of statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of

$150,000 multiplied by each work infringed, or in such other amount as may be

determined at trial, or at SME's election, pursuant to 17 U.S.C. § 504(b), its actual

damages and Lyon's and Collins's profits from infringement, as will be proven at trial;

4)  An award of attorneys' fees, expenses, costs, and interest;

5)  An order directing impoundment and destruction of any copies that infringe SME's

copyrights; and

6)  Such other legal and equitable relief as the Court may deem SME is entitled to receive.


Dated:   October 23, 2020                           GIBSON, DUNN & CRUTCHER LLP

                                                    By:   /s/ Gabrielle Levin
                                                        Gabrielle Levin
                                                        GLevin@gibsondunn.com
                                                        Scott A. Edelman (*Admitted Pro Hac Vice*)
                                                        SEdelman@gibsondunn.com
                                                        Nathaniel L. Bach (*Admitted Pro Hac Vice*)
                                                        NBach@gibsondunn.com
                                                        200 Park Avenue, 48th Floor
                                                        New York, NY  10166-0193
                                                        Telephone:  212.351.4000
                                                        Facsimile:  212.351.4035

                                                        *Attorneys for Defendant and Counterclaim*
                                                        *Plaintiff Sony Music Entertainment*